IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FREEWAY FOODS OF | ) | Case No. 10-11282 |
| GREENSBORO, INC. | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JANE H. WALTER, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 10-02057 |
| v. | ) | |
| | ) | |
| FREEWAY FOODS, INC., FREEWAY | ) | |
| FOODS OF GREENSBORO, INC., | ) | |
| GARY M. FLY, individually, LYNNE R. | ) | |
| FLY, individually, YELLOW SIGN, INC., | ) | |
| and WAFFLE HOUSE, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This matter came before the Court on January 20, 2011, upon the Plaintiff's Motion for (I) Remand of the Claims Involving the Plaintiff the Non-Debtors (sic), or, in the Alternative, (II) Mandatory Abstention of the Claims Involving the Non-Debtors and Remand to State Court, or, in the Further Alternative, (III) Permissive Abstention of All Claims and Remand to State Court (the "Motion to Remand") filed by the above-captioned plaintiff, Jane H. Walter ("Walter"), on December 7, 2010. J. Patrick Haywood and Rachel Scott Decker appeared on behalf of Walter, William B. Sullivan appeared on behalf of Waffle House, Inc. ("Waffle House") and Yellow Sign, Inc. ("YSI"), and James C. Lanik appeared on behalf of the Trustee. The parties were given an opportunity to file post-hearing briefs, which Walter, Waffle House, and YSI did. After

1

consideration of the pleadings, the evidence presented, and the arguments of counsel, the Motion for Remand will be denied.  For the reasons set forth below, the Court finds that mandatory abstention does not apply, and declines to exercise its discretion to permissively abstain from hearing the Adversary Proceeding or to remand it to state court.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which this Court has the jurisdiction to hear and determine.

## II. FACTS

### A. Procedural Background

Freeway Foods of Greensboro, Inc. (the "Debtor") was in the business of operating 36 Waffle House franchises in North Carolina until an involuntary bankruptcy was filed against it on July 13, 2010.  On July 30, 2010, Walter, the owner of certain real property on which was located a Waffle House franchise operated by the Debtor, filed suit in the Superior Court of Guilford County, North Carolina, against the Debtor, Gary and Lynne Fly (the principals of the Debtor and, collectively, the "Flys"), Waffle House (the franchisor of the Debtor's Waffle House locations), and YSI (an affiliate of Waffle House), seeking damages as a result of an alleged scheme between and among the Defendants to defraud her.  The Walter complaint set forth eleven causes of action: (1) breach of lease agreement against the Debtor; (2) fraud against the Debtor and the Flys; (3) unfair and deceptive trade practices against the Debtor; (4) piercing the corporate veil against the Flys; (5) breach of lease agreement against Waffle House and YSI; (6) successor liability against Waffle

2

House and YSI; (7) lender liability against Waffle House and YSI; (8) interference with contract against Waffle House and YSI; (9) fraud against Waffle House and YSI; (10) unfair and deceptive trade practices against Waffle House and YSI; and (11) conspiracy against the Debtor, Waffle House, YSI, and the Flys.

Prior to both the bankruptcy and the commencement of Walter's suit, on February 18, 2010, YSI filed an action for declaratory judgment against the Debtor and the Flys in Fulton County, Georgia (the "Georgia Action"), seeking a determination that the Debtor was in default under a note and credit agreement owned by YSI. On March 24, 2010, the Debtor and the Flys filed an Answer and Counterclaim (the "Georgia Counterclaim") against YSI. That same day, the Debtor and the Flys filed suit in North Carolina state court (the "North Carolina Action") seeking to enjoin a foreclosure sale of its assets. The complaint filed in the North Carolina Action (the "Debtor Complaint") contains identical allegations and causes of action to those found in the Georgia Counterclaim. The North Carolina Action was ultimately unsuccessful—no injunction was obtained, and the action was voluntarily dismissed.

On October 26, 2010, the Debtor filed a notice of removal of the Georgia Action to the United States District Court for the Northern District of Georgia, and then, on November 12, 2010, the Debtor and the Flys filed a motion to transfer the case to the Middle District of North Carolina. The case was transferred on December 6, 2010, and referred to the Bankruptcy Court as an adversary proceeding (Adv. No. 11-2008) on April 7, 2011. Walter takes many of the factual allegations in her Complaint directly from the Debtor Complaint—which, as discussed above, contains allegations identical to those found in the Georgia Counterclaim in the Georgia Action that is now before this Court—often citing to the Debtor Complaint or quoting it, word for word, as a

basis for her claims against the Defendants.

On October 4, 2010, Waffle House and YSI filed a Motion to Dismiss Walter's claims against them as well as a motion to stay Walter's state court action for six months pending the resolution of the claims in the Georgia Action and the Trustee's decision on whether to assume or reject the Debtor's lease with Walter.  On October 5, 2010, the Flys filed an Answer to the Complaint.  On November 5, 2010, the Debtor filed a Notice of Removal to the United States District Court for the Middle District of North Carolina.  On November 19, 2010, Walter filed a Notice of Dismissal, voluntarily dismissing her claims in this Adversary Proceeding against the Debtors without prejudice, a Response to the Notice of Removal, and a Brief in Support of Motion for Remand.

On November 22, 2010, Walter filed the Motion to Remand, seeking remand to state court of her remaining nine claims, as follows: (1) fraud against Mr. Fly, (2) piercing the corporate veil against the Flys; (3) breach of lease agreement against Waffle House and YSI; (4) successor liability against Waffle House and YSI; (5) lender liability against Waffle House and YSI; (6) interference with contract against Waffle House and YSI; (7) fraud against Waffle House and YSI; (8) unfair and deceptive trade practices against Waffle House and YSI; and (9) conspiracy against Waffle House, YSI, and the Flys.  The case was referred to the Bankruptcy Court on December 2, 2010, and this Adversary Proceeding was opened on December 7, 2010.  On January 3, 2010, the Trustee, as well as Waffle House and YSI, filed objections to the Motion to Remand.

**B.  Factual Allegations**

The claims in both the Georgia Action and this Adversary Proceeding stem from a series of events involving the takeover of the Debtor's franchises by Waffle House and YSI and the eventual

4

involuntary bankruptcy of the Debtor.

Prior to its bankruptcy, the Debtor had been a franchisee of Waffle House since 1972, and it owned and operated 36 Waffle House restaurants in North Carolina. On January 30, 2006, Walter sold some real property in Raleigh. In order to defer taxes, Walter elected to acquire replacement property for a Section 1031 like-kind exchange. I.R.C. § 1031(a)(1). Walter began to investigate the property at 3929 Battleground Avenue, Greensboro, NC—a location where the Debtor was operating a Waffle House franchise—as potential replacement property. In the course of due diligence for the transaction, Walter discovered that the Debtor was in a "technical default" under a loan with SunTrust Bank, N.A. ("SunTrust"), but she alleges that Mr. Fly assured her that the "technical default" was being dealt with pursuant to an agreement with SunTrust, and that it had not affected his status as a Waffle House franchisee. In addition, Walter claims that a representative of Waffle House further assured her that the Debtor was a franchisee in good standing. Walter alleges that she closed on the property in reliance on these representations, intending to continue to lease the property to the Debtor for use as a Waffle House franchise.

On April 19, 2006, the Debtor entered into a commercial lease (the "Lease") with Walter effective until August 6, 2015, with the option to extend the term for additional five year periods. The Lease provided that the Debtor was in good standing as a franchisee of Waffle House and that the property would be used solely and exclusively as a Waffle House restaurant in accordance with the terms of the franchise agreement between the Debtor and Waffle House. Furthermore, the Lease contained a provision allowing the Debtor to assign the Lease to Waffle House, in which case Waffle House would take full responsibility under the Lease. Walter contends that Waffle House required that the above assignment provisions be included in the Lease.

5

Walter alleges that Waffle House then devised a scheme with YSI whereby they used misrepresentations and duress to obtain rent concessions from certain landlords of franchise property, including Walter, and then gained control of the franchises at a discount as a result. These same allegations are made in the Debtor Complaint from the North Carolina Action, as well as the Georgia Counterclaim in the Georgia Action, which has been removed to this Court. Walter cites to, or quotes from, the Debtor Complaint for each factual statement that she makes regarding the alleged scheme.

Specifically, by reference to the Debtor Complaint, Walter alleges that sometime in 2000, the Debtor borrowed funds from SunTrust (the "SunTrust Loan") to finance the acquisition of the Waffle House franchises. She further alleges, by quoting the Debtor Complaint, that sometime during the pendency of the Lease, Waffle House "concocted a plan to begin taking control of the franchised Waffle House restaurants throughout the United States." In furtherance of this scheme, Walter alleges, quoting the Debtor Complaint, Waffle House convinced the Debtor—"under the cloud of financial duress created by" Waffle House—to obtain rent concessions from the landlords of its restaurants in return for being allowed to continue operations as a franchisee. Walter alleges, quoting the Debtor Complaint, that Waffle House's actual plan was to obtain the rent concessions "then terminate the franchise, take control of the restaurants, and essentially convert the better lease terms to its own benefit."

Walter alleges that in furtherance of this scheme, YSI negotiated to purchase the SunTrust Loan from SunTrust sometime in 2009 and became the Debtor's lender. Then, on September 2, 2009, Walter alleges, by reference to the Debtor Complaint, Waffle House and YSI sent a Notice of Termination to the Debtor alleging that it was insolvent and in default under the SunTrust Loan.

6

At this point, Walter alleges that Waffle House, YSI, the Debtor, and the Flys began discussing a "friendly foreclosure"—the same term used in the Debtor Complaint—whereby the Flys would turn over the assets of the Debtor to YSI, which would then turn them over to Waffle House. As a result, Walter alleges, Waffle House would become the owner and/or operator of the Debtor's franchises, including the one located on her property, and the Flys would receive a release from their personal guaranties. Walter also alleges that Waffle House and YSI promised the Flys $150,000 for their participation.

Walter alleges, again by quoting the Debtor Complaint, that "one of the preconditions to closing was that [the Debtor] obtain rent reductions from the landlords of the various Waffle House restaurants owned by [the Debtor] by November 15, 2009." In furtherance of this plan, Walter alleges that in the beginning of October 2009, Bob Moore, the Vice President of Finance for Waffle House, called Walter to discuss the status of the Debtor's financial condition. Mr. Moore, Waffle House CFO Kim Kraft, and Walter then had a meeting, at which Walter alleges Mr. Moore and Ms. Kraft represented that rent concessions from Walter were needed if the Debtor were to avoid bankruptcy. Walter refers to the Debtor Complaint for her allegation that the Debtor was not insolvent nor on the verge of bankruptcy at the time.

Walter further claims that after the meeting, Waffle House sent letters and e-mails to her, emphasizing the need for rent reductions, and stressing the dire financial conditions of the Debtor. Walter alleges that the Flys and the Debtor knew or should have known that these misrepresentations were happening but did nothing to inform Walter that the statements were false. Walter alleges, by quoting the Debtor Complaint, that

> the goal of [Waffle House] and YSI was to bully the landlords into deeper rent discounts. [Waffle House] and YSI stated that if [the Debtor] filed bankruptcy [the

7

Debtor] would reject the leases in the bankruptcy proceeding, leaving the landlords without a tenant and with an unsecured, and likely uncollectible claim for back rent. The only option presented to the landlords was a rent concession to avoid the bankruptcy filing.

Walter alleges that she initially refused the $40,000 to $60,000 in rent reductions that the Defendants sought from her, but ultimately, based on the representations regarding the financial condition of the Debtor, agreed to rent reductions totaling $7,000 per year, as well as agreeing to no increases on renewals of the Lease.

Walter alleges that once Waffle House and YSI obtained the rent reductions they wanted from the landlords, Waffle House and YSI declined to pursue the "friendly foreclosure" they had negotiated with the Debtor, and instead decided to foreclose on the Debtor's operations and either operate the stores themselves under the new lease terms or force the landlords to sell the properties to Waffle House at a discount. In furtherance of this plan, Walter alleges, as does the Debtor Complaint, that YSI sent a letter to the Debtor in January 2010 stating that it was in default under the SunTrust Loan and demanding payment in full; it then began foreclosure proceedings. Walter alleges, as does the Debtor Complaint, that as a result of the foreclosure, the Debtor assigned and conveyed all of its assets—including the Lease— to YSI and Waffle House in April of 2010. Walter alleges that the Debtor defaulted under the Lease by, among other things, ceasing payment of rent, assigning the Lease to a creditor, and abandoning the premises. Walter alleges that it was the foreclosure proceedings instituted by Waffle House and YSI that caused the Debtor to breach the Lease, and that, in fact, Waffle House and YSI anticipated and intended that such a breach would occur. Walter further alleges that despite a "valid assignment" by the Debtor of the Lease to Waffle House and YSI under the language in the Lease (that she alleges Waffle House dictated), Waffle House and YSI refused to recognize the validity of the assignment or make payments under the

8

Lease.

## III. ANALYSIS

In the Motion to Remand, Walter argues that the Court should remand this Adversary Proceeding to state court due to the Court's lack of subject matter jurisdiction. Although Walter conceded at hearing that the Court at least has "related to" jurisdiction under 28 U.S.C. § 1334(b), that does not end the issue. For purposes of abstention and remand, the Court must determine whether the causes of action in the Adversary Proceeding are "related to" the Debtor's bankruptcy case or are "core" causes of action. To do so, the Court must first lay the groundwork for bankruptcy jurisdiction.

## A.  Bankruptcy Jurisdiction

The jurisdiction of a bankruptcy court is established by 28 U.S.C. § 1334(b), which gives district courts jurisdiction over cases under Title 11 and proceedings arising under, arising in, or related to cases under Title 11. 28 U.S.C. § 1334(b). District courts may refer such matters to bankruptcy courts. 28 U.S.C. § 157(a). Proceedings "arising under" Title 11 are causes of action created or determined by a statutory provision of Title 11. In re Harris, 590 F.3d 730, 737 (9th Cir. 2009); Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006). A proceeding "arises in" a Title 11 case when it would have no existence outside of a bankruptcy case. Harris, 590 F.3d at 737; Stoe, 436 F.3d at 216.

Bankruptcy courts may make binding decisions only in "core proceedings" that arise under or arise in a case under Title 11. 28 U.S.C. § 157(b)(1). A bankruptcy court may conduct a jury trial in a core proceeding only with the consent of all the parties. 28 U.S.C. § 157(e). Proceedings "related to" the bankruptcy are non-core and can be heard by the bankruptcy court, but it must

submit proposed findings of fact and conclusions of law to the district court, not issue final orders. In re Exide Technologies, 544 F.3d 196, 205 (3rd Cir. 2008); Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 448 (2d Cir. 2005). Only a district court—not a bankruptcy court—may enter final judgment in a non-core, "related to" proceeding. Kerusa v. W10Z/515 Real Estate Ltd. P'ship, No. 04 Civ. 708(GEL), 2004 WL 1048239, at *2 (S.D.N.Y. May 7, 2004).

A non-core proceeding has four characteristics: (1) it is not specifically listed as a core proceeding in 28 U.S.C. § 157(b)(2)(B)-(N); (2) it existed prior to the bankruptcy case; (3) it would continue to exist independent of the provisions of Title 11; and (4) the parties' rights, obligations, or both are not significantly affected by the filing of the bankruptcy. Gertz v. Twin City Fire Ins. Co. (In re Infotopia, Inc.), No. 4:07 CV 02936, 2007 WL 2859774, at *2 (N.D. Ohio Sept. 26, 2007); see Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson, No. 06 C 0869, 2006 WL 1457786, at *2 (N.D. Ill. May 23, 2006) (proceeding is non-core if it does not involve a substantive right created by bankruptcy law and is one that could exist outside of bankruptcy); Kerusa, 2004 WL 1048239, at *2 (proceeding is non-core if it exists independently under state law and is merely "related to" the bankruptcy case). The generally accepted definition of "related to" was first stated by the Third Circuit in Pacor, Inc. v. Higgins:  proceedings "related to" the bankruptcy case are those whose outcome could have any conceivable effect on the bankruptcy estate. 743 F.2d 984, 994 (3d Cir. 1984); see, e.g., Morrison v. Western Builders of Amarillo, Inc. (In re Morrison), 555 F.3d 473, 479 (5th Cir. 2009); Exide Technologies, 544 F.3d at 206; Nilsen v. Neilson (In re Cedar Fundings, Inc.), 419 B.R. 807, 818 (B.A.P. 9th Cir. 2009).

**B.  Determination of Core Status**

Core proceedings are those that invoke a substantive right provided by Title 11 or by their

nature could arise only in the context of a bankruptcy.  Morrison, 555 F.3d at 479 (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)); Janssen v. Hirsch (In re Creekside Vineyards, Inc.), No. CIV 2:09-2273 WBS EFB, 2009 WL 3378989, at *6 (E.D. Cal. Oct. 19, 2009) (quoting In re Gruntz, 202 F.3d 1074, 1081 (9th Cir. 2000)); Silliman v. General Motors Corp., No. 1:09-CV-1603-RWS, 2009 WL 3063371, at *2 (N.D. Ga. Sept, 22, 2009); Mirant Corp. v. The Southern Company, 337 B.R. 107, 117 (N.D. Tex. 2006); Allen v. J.K. Harris & Co., L.L.C., 331 B.R. 634, 640-41 (E.D. Pa. 2005); PSA, Inc. v. Inter-World Communications, Inc. (In re PSA, Inc.), No. 00-3570 (CGC), 2003 WL 22938894, at *2 (Bankr. D. Del. Dec. 8, 2003).  The Second Circuit has stated:

> The nature of the proceeding is also important. "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function."

Mt. McKinley, 399 F.3d at 448 (quoting In re United States Lines, 197 F.3d 631, 636 (2d Cir. 1999)).  Section 157(b)(2) of Title 28 contains a non-exhaustive list of core proceedings. 28 U.S.C. § 157(b)(2); Bankruptcy Services, Inc. v. Ernst & Young (In re CBI Holding Co., Inc.), 529 F.3d 432, 460 (2d Cir. 2008) ("non-exhaustive" list); Mt. McKinley, 399 F.3d at 448 ("non-exclusive laundry list"); McHale v. Citibank, N.A., No. 09 Civ. 6064 (SAS), 2009 WL 2599749, at *4 (S.D.N.Y. Aug. 24, 2009) ("non-exhaustive list").

As explained by the Third Circuit, a court must examine each claim to determine if it is core.

> We reiterate that courts must engage in a claim-by-claim analysis to determine whether a proceeding is core. Each state court claim removed to bankruptcy court must be considered individually; non-core claims do not become core simply by virtue of being pursued in the same litigation as core claims.

Exide Technologies, 544 F.3d at 220 (citation omitted); Mirant Corp., 337 B.R. at 116 ("The word

'proceedings' as used in § 157 refers to specific claims, causes of action, or grounds for relief, and not to the entire action. Therefore, an independent determination is to be made as to each of the causes of action asserted by plaintiffs in the complaint.") (citations omitted).  A single cause of action may include both core and non-core claims.  Exide Technologies, 544 F.3d at 206.

In enacting 28 U.S.C. § 1334(b), Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.  In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 317 (S.D.N.Y. 2003)  (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995)).

> The Second Circuit has observed, "Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings" and that "both the Supreme Court and this court have . . . broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments."  Broadly construing the federal courts' bankruptcy jurisdiction is essential to their ability to preserve assets and reorganize the estate, particularly where there is a "complex factual scenario, involving multiple claims, policies and insurers."

Id. at 329 (citations omitted).  Thus, the term "core" must be construed broadly—close to or congruent with constitutional limits.  LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.), 319 Fed. Appx. 40, 41 (2d Cir. 2009); CBI Holding, 529 F.3d at 460; Veyance Tech., Inc. v. Lehman Bros. Special Fin., Inc., No. 09 Civ. 8851(BSJ), 2009 WL 4496051, at *1 (S.D.N.Y. Dec. 3, 2009); Enron Corp. v. Citigroup, Inc. (In re Enron Corp.), 349 B.R. 108, 111 (Bankr. S.D.N.Y. 2006).

The Court now turns to Walter's causes of action[1] to determine if they are core.  The Court

---

[1]Despite the fact that Walter has dropped her claims against the Debtor, she has dismissed those claims without prejudice and is free to bring them again whenever she chooses. In fact, counsel for Walter conceded at the hearing on the Motion to Remand that she is likely to re-assert her claims against the Debtor if her case remains in bankruptcy court. In addition, since Walter's claims involve a determination of whether the Lease was validly assigned to Waffle

notes that Walter filed a proof of claim in the Debtor's bankruptcy. However, while the filing of a proof of claim by a plaintiff may cause the plaintiff's claims against non-debtor defendants to be "related to" proceedings, it will not, taken alone, result in their being considered "core" proceedings. Exide Technologies, 544 F.3d at 213-14. Waffle House, YSI, and the Flys have all filed proofs of claim against the Debtor as well.

Two of Walter's causes of action (the first and fifth) involve allegations that the Debtor, Waffle House, and YSI breached the Lease. To determine whether a contract dispute is core, the court should look to (1) whether the contract is antecedent to the reorganization petition (i.e., whether it existed before the petition was filed) and (2) the degree to which the proceeding is independent of the reorganization. Mt. McKinley, 399 F.3d at 448; Northwest Airlines, Inc. v. City of Los Angeles (In re Northwest Airlines Corp.), 384 B.R. 51, 57 (S.D.N.Y. 2008). The Lease was executed prior to the Debtor's bankruptcy and may be property of the Debtor's estate. Indeed, much of the Adversary Proceeding centers around whether the Lease was validly assigned to Waffle House prior to the petition date—if the Court determines it was not, the Lease would be property of the estate. A determination of the rights of the parties under the Lease will necessarily involve a resolution of the proofs of claim filed by Walter, Waffle House, and YSI. These causes of action

---

House, the Debtor is potentially a necessary party to this Adversary Proceeding under Rule 19(1) of the Federal Rules of Civil Procedure. Rule 19(1) requires the joinder of a party if the court cannot accord complete relief among the parties in that party's absence. In In re Cook, the Court reasoned that even though a debtor had been dismissed from a case, "[t]he debtor was the property owner, and it is difficult to understand how the litigation could go forward in state court without the debtor joined as a party." In re Cook, 384 B.R. 282, 296 -297 n.22 (Bankr. N.D. Ala. 2008). Here, where the resolution of Walter's claims necessarily involves a determination of the Debtor's rights and responsibilities (or lack thereof) under the Lease that Walter negotiated with the Debtor, it is similarly difficult to understand how the litigation could go forward in state court without the Debtor joined as a party.

are core.  See 28 U.S.C. § 157 (b)(2)(B) ("allowance or disallowance of claims against the estate");

Ames Department Stores, 319 Fed. Appx. at 41 (dispute that involves an issue already before the

bankruptcy court as part of the court's consideration of a party's claim against the estate affects a

core bankruptcy function and is therefore core);  CBI Holding, 529 F.3d at 461(claim for breach of

contract was core claim because it affected the allowance or disallowance of a claim against the

estate per 28 U.S.C. § 157(b)(2)(B)); Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In

re Iridium Operating LLC), 285 B.R. 822, 832 (S.D.N.Y. 2002) (traditionally non-core claims based

on state law are core claims because they constitute objections to the creditor's proof of claim); see

also George v. City of Morro Bay (In re George), 322 F.3d 586, 590 (9th Cir. 2003) (causes of

action based upon bankruptcy court's ruling that a lease was rejected are core proceedings).

Although the Court may need to interpret state law to resolve these claims, the applicability of state

law to a proceeding is insufficient to render it a non-core proceeding.  Southmark Corp. v. Coopers

& Lybrand (In re Southmark Corp.), 163 F.3d 925, 930 (5th Cir. 1999);  Mirant Corp., 337 B.R. at

117; In re Roman Catholic Archbishop of Portland in Oregon, 338 B.R. 414, 420 (Bankr. D. Ore.

2006).

        The rest of Walter's causes of action (fraud, unfair and deceptive trade practices, piercing

the corporate veil, successor liability, lender liability, interference with contract, and conspiracy)

are non-core, "related to" proceedings.  They do not invoke a substantive right provided by Title 11,

and they are not, by their nature, matters that could arise only in the context of a bankruptcy.  See

Wilson, 2006 WL 1457786, at *5 (claims for breach of fiduciary duty, unjust enrichment, fraud, civil

conspiracy, illegal dividend, aiding and abetting breach of fiduciary duty, and deepening insolvency

are non-core); Mirant Corp., 337 B.R. at 117 (claims for unlawful dividend, alter ego, and aiding

14

and abetting breach of fiduciary duty are non-core). Although it could be argued that the determination of these claims will "affect the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship" pursuant to 28 U.S.C. § 157 (b)(2)(O), courts are reluctant to determine that a proceeding is a core proceeding pursuant to this section solely because of the potential for increased value enuring to the estate. Enron Corp., 349 B.R. at 112.

## C. Mandatory Abstention

Walter argues that the Court is required to abstain from hearing the case under the doctrine of mandatory abstention set forth in 28 U.S.C. § 1334(c)(2). The Defendants argue that mandatory abstention does not apply in this case because Walter filed her cause of action post-petition. As explained below, the Court agrees with the Defendants and concludes that mandatory abstention does not apply to the Adversary Proceeding.

The doctrine of mandatory abstention is found in 28 U.S.C. § 1334(c)(2), which provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

The United States District Court for the Middle District of North Carolina has held that

mandatory abstention is appropriate under § 1334(c)(2) when the following requirements are met: (1) a timely motion is made; (2) the proceeding is based on a state law claim or a state law cause of action; (3) the proceeding is related to a case under Title 11; (4) the proceeding does not arise under Title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

Blanton v. IMN Fin. Corp., 260 B.R. 257, 263 (M.D.N.C. 2001); see Southern Community Bank

15

& Trust v. Goldston (In re 3G Properties, LLC), No. 10-04763-8-JRL, 2010 WL 4027770, at *1 (Bankr. E.D.N.C. Oct. 14, 2010).  As discussed above, two of Walter's eleven causes of action are core proceedings, so mandatory abstention cannot apply to them.  Moreover, the sixth requirement has not been met with regard to all of Walter's claims.

### 1.  This Adversary Proceeding Was Not Commenced Prior to the Debtor's Bankruptcy

The sixth requirement states, in part, that the "action is commenced."  Must the action be filed prior to bankruptcy for mandatory abstention to apply?[2]  A leading treatise states that "many courts have held that for the statute to be applicable, the cause of action must have been commenced prior to the filing of the petition commencing the title 11 case." 1 Collier on Bankruptcy, ¶ 3.05[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); see also Container Transport, Inc. v. Scott Paper Co. (In re Container Transport, Inc.), 86 B.R. 804, 805-07 (E.D. Pa. 1988) (holding that "an action [must] be pending in a state court forum at the time that a proceeding is initiated in the bankruptcy court in order for a party to successfully invoke mandatory abstention"); Ram Constr. Co. v. Port Authority of Allegheny County, 49 B.R. 363, 367 (W.D. Pa. 1985) (holding that section 1334(c)(2) was not applicable since an action had not been commenced in state court); Taxel v. CommerceBank (In re World Fin. Servs. Center, Inc.), 64 B.R. 980, 989 (Bankr. S.D. Cal. 1986) ("Mandatory abstention does not apply to the instant case in that there is no pending state court action."); Braucher v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago (In re Illinois-California

---

[2]This issue is similar to, but different from, the question of whether mandatory abstention is applicable to a removed case.  Cf. Stoe, 436 F.3d at 214 (applicable to removed case); Mt. McKinley, 399 F.3d at 447 (applicable to removed case) with Lazar v. State of California (In re Lazar), 237 F.3d 967, 981-82 (9th Cir. 2001) (not applicable to removed case); Security Farms v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1009-1010 (9th Cir. 1997) (not applicable to removed case).

16

Express, Inc.), 50 B.R. 232 (Bankr. D. Colo. 1985) (holding that a "proceeding in the state court forum [must have] been commenced" for mandatory abstention to apply); Excelite Corp. v. Custom Vanities, Inc. (In re Excelite Corp.), 49 B.R. 923, 925 (Bankr. N.D. Ga. 1985) (holding that mandatory abstention was not applicable when there was no state court action pending); contra Midgard Corp. v. Kennedy (In re Midgard Corp.), 204 B.R. 764, 778 (B.A.P. 10th Cir. 1997) (finding that the majority position "reads a requirement into the statute which plainly does not exist"); World Solar Corp. v. Steinbaum (In re World Solar Corp.), 81 B.R. 603, 610 (Bankr. S.D. Cal. 1988) (holding that "a pending state court action is not a prerequisite for mandatory abstention" so long as the "action can be filed on a timely basis in a state court of appropriate jurisdiction").

The clear majority of cases supports the position that the cause of action must be pending in state court prior to the bankruptcy for mandatory abstention to apply. See HH1, LLC v. Lo'r Decks at Calico Jacks, LLC, Adv. No. 10-2004, 2010 WL 1009235, at *4 (Bankr. M.D.N.C. Mar. 18, 2010) ("the fifth requirement under section 1334(c)(2) is that there must be an action commenced in state court"); In re Ackerman, Herbst & Pliskow, M.D., P.A., 221 B.R. 568, 569 (Bankr. S.D. Fla. 1998) ("like the majority of courts that have considered this issue, this Court finds that some type of 'proceeding' must be pending for mandatory abstention to apply"); TTS, Inc. v. Stackfleth (In re Total Technical Servs., Inc.), 142 B.R. 96 (Bankr. D. Del. 1992) ("Mandatory abstention does not apply, however, because an action has not previously been commenced in a State forum, as § 1334(c)(2) requires.").

The minority position is inconsistent with the legislative history and the plain language of the statute. As Collier notes, "a forebear of section 1334(c)(2) referred to a state court action that 'has been or will be timely instituted.'" The currently applicable statute uses different language,

17

with no reference to an action that "will be timely instituted." This fact strongly suggests that the viewpoint espoused in World Solar Corp. is incorrect. See 1 Collier on Bankruptcy, ¶ 3.05[2], n.17 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The minority view is further weakened by the plain language of the statute, which states that the court shall abstain "if an action is commenced . . . in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2) (emphasis added); see also Flores Rivera v. Telemundo Group, 133 B.R. 674, 676 (D.P.R. 1991) (holding that World Solar Corp. was contrary to the clear language of § 1334(c)(2)); In re Boughton, 49 B.R. 312, 315 (Bankr. N.D. Ill. 1985) ("Coronet suggests that the cited language means 'is commenced or can be commenced ... in a State forum.' That is not, however, the import of the language used."). The minority position essentially rewrites the statute. Thus, the better view is that a case must be pending in state court prior to bankruptcy for mandatory abstention to apply. Since it is undisputed that Walter filed this Adversary Proceeding in state court after the Debtor's involuntary bankruptcy petition was filed, Walter has not met this requirement.

### 2. This Adversary Proceeding Cannot Be Timely Adjudicated in State Court

The sixth requirement also necessitates that the "action . . . can be timely adjudicated . . . in a state forum of appropriate jurisdiction." There are seven factors to consider in determining whether an action can be timely adjudicated in state court: (1) the backlog of the state court and federal court calendars; (2) the status of the proceeding in state court prior to being removed; (3) the status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or a liquidation case. 3G Properties, 2010 WL 4027770, at *6. The burden of

proving timely adjudication is on the party seeking abstention.  Id.

Walter's complaint was not filed in state court until after the Debtor's bankruptcy was filed. Only the Flys have answered, and no discovery has occurred.  The matter has not progressed in this Court—all recent proceedings have been concerned with removal of the case to this Court and remand to state court.  The issues in this Adversary Proceeding are factually and legally complex and involve non-debtor defendants.  The record does not reflect whether the parties consent to the Court entering final judgment in the non-core causes of action.  Walter has made a jury demand. No evidence was presented concerning the speed at which the Superior Court of Guilford County could try this Adversary Proceeding.[3]  This bankruptcy is a liquidation, and adjudication of the Adversary Proceeding in this Court will allow the Court to coordinate motions, discovery, and other matters involving the Georgia Action, resulting in a more efficient and expeditious proceeding.  As such, Walter has not met her burden of proving timely adjudication in state court.  See Stoe, 436 F.3d at 219 (timely adjudication is determined with respect to the needs of the Title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed); In re WorldCom, 293 B.R. at 331 (court found that action could not be timely adjudicated in state court because of the size of the bankruptcy, the close connection between the debtor and other defendants, and the complexity of the litigation; remand would lead to duplicative motion practice and repetitious discovery); 3G Properties, 2010 WL 4027770, at *6 ("Timely adjudication is not measured against an absolute time guideline, but rather measured by the needs of the bankruptcy case.").  Thus, Walter's argument concerning mandatory abstention fails.

---

[3]Walter attached to her brief a statistical analysis of the disposition of cases in Guilford County, North Carolina, from July 1, 2009 through June 30, 2010, but did not offer it into evidence.

19

## D. Permissive Abstention

Walter argues that if mandatory abstention does not apply, then the Court should permissively abstain from hearing this Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(1) and allow the case to go forward in state court. The Court begins with the understanding that a federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted. In re Bostic Constr., Inc., 435 B.R. 46, 57 (Bankr. M.D.N.C. 2010); Brown v. Shepard (In re Lorax Corp.), 295 B.R. 83, 95 (Bankr. N.D. Tex. 2003). There is a presumption in favor of the exercise of federal jurisdiction and against abstention. Rahl v. Bande, 316 B.R. 127, 135 (S.D.N.Y. 2004).

Many courts have articulated the factors that a court should consider when determining whether to permissively abstain from hearing a case. See, e.g., Monmouth Investor, LLC v. Saker, No. 09-3063 (FLW), 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010); First Bank v. Arafat, No. H-05-4337, 2006 WL 2612746, at *4 (S.D. Tex. Sept. 11, 2006); L. Ardan Dev. Corp. v. Touhey (In re Newell), 424 B.R. 730, 735-36 (Bankr. E.D.N.C. 2010); Century Forest Prods. v. H.W. Indus., Inc. (In re Century Forest Prods., Inc.), No. 09-10016, 2009 WL 4839704, at *2 (Bankr. M.D.N.C. Dec. 15, 2009); Mercer's Enters., Inc. v. Seascape at Wrightsville Beach, LLC (In re Mercer's Enters., Inc.), 387 B.R. 681, 686 (Bankr. E.D.N.C. 2008). The factors that a court should consider are: (1) efficiency in the administration of the debtor's estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) whether the issues involve difficult or unsettled issues of state law; (4) the presence of a related proceeding commenced in state court; (5) the existence of a jurisdictional basis other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core"

proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state courts; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceedings in bankruptcy court involved forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) whether non-debtor parties are involved in the proceeding.  Blanton, 260 B.R. at 265; Newell, 424 B.R. at 735-36; Century Forest, 2009 WL 4839704, at *2; Mercer's Enters., 387 B.R. at 686.  An examination of each of these factors reveals that the Court should not abstain from hearing the Adversary Proceeding.

### 1. Efficiency in the Administration of the Debtor's Estate

This factor weighs heavily against remand.  The bulk of the allegations in Walter's complaint are taken directly from the Debtor Complaint in the North Carolina Action, which contains identical allegations to those found in the Georgia Counterclaim in the Georgia Action that is now before the Court.  See Broadhollow Funding, LLC v. Bank of America, N.A. (In re American Home Mortgage Holdings, Inc.), 390 B.R. 120, 138 (Bankr. D. Del. 2008) ("Considering how intertwined this proceeding is with both other proceedings before this Court and the proofs of claim filed in the debtors' case, keeping this proceeding in this Court will likely enhance the efficiency with which the debtors' estates are administered. This factor weighs against abstention.").  When deciding the Georgia Action, this Court will be required to make factual findings regarding the allegations in the Georgia Counterclaim—the Debtor's own allegations against Waffle House and YSI—which form the underpinning for Walter's claims against the Defendants in this Adversary Proceeding.

It is more efficient if only one court is required to familiarize itself with the voluminous record that is sure to evolve in these cases.  Rahl, 316 B.R. at 136.  Litigating the Georgia Action and this Adversary Proceeding in one court will reduce the potential for inconsistent adjudications,

duplicative discovery, and duplicative motions, and will allow for more efficient administration of the Debtor's estate than would be possible if these actions were allowed to proceed in different courts.  Id. at 136;  Blackacre Bridge Capital LLC v. Korff (In re River Center Holdings, LLC), 288 B.R. 59, 69 (Bankr. S.D.N.Y. 2003);  ML Media Partners v. Century/ML Cable Venture (In re Adelphia Communications Corp.), 285 B.R. 127, 145 (Bankr. S.D.N.Y. 2002);  Landry v. Exxon Pipeline Co., 260 B.R. 769, 804 (Bankr. M.D. La. 2001).  A court should not permissively abstain when duplicative and wasteful motion practice and discovery would proceed separately in different courts.  In re WorldCom, 293 B.R. at 333-34.

The Defendants argue that they may assert third-party claims for indemnification for breach of the Lease, pursuant to the franchise agreement between Waffle House and the Debtor, and that such claims, if raised, would further affect the administration of the Debtor's estate.  Although the franchise agreement and the Debtor's rights thereunder are assets of the estate, Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.), 90 F.3d 1472, 1476 (9th Cir. 1996), no such claims yet have been brought, so the Court need not determine whether such claims exist.

### 2.  The Extent to Which State Law Issues Predominate / Whether the Issues Involve Difficult or Unsettled Issues of State Law / Feasibility of Severing State Law Claims from Core Bankruptcy Matters

Since the second, third, and eighth factors all deal with the importance of state law in the Adversary Proceeding, the Court will consider them together.  It is undisputed that state law issues predominate in this action, but this only slightly favors abstention; bankruptcy courts address matters of state law regularly.  River Center Holdings, 288 B.R. at 70.  No party has argued that the claims involve difficult or unsettled issues of state law, which weighs against abstention.  Rahl, 316 B.R. at 135 (the existence of state law claims does not dictate abstention when the state law claims are

not particularly novel or complex). As discussed above, two of Walter's claims are core, and it would be difficult and inefficient to separate them from the non-core claims. Taken together, these factors do not favor abstention.

### 3.  The Presence of a Related Proceeding Commenced in State Court

This factor also weighs against abstention. There is no related proceeding pending in state court. Broadhollow Funding, 390 B.R. at 139. Instead, there is a related proceeding pending before this Court involving identical factual allegations. As discussed above, it is difficult to understand how these two cases could be efficiently decided by two different courts.

### 4.  The Existence of a Jurisdictional Basis Other Than 28 U.S.C. § 1334

The Trustee does not allege that there is any jurisdictional basis for the Adversary Proceeding

in federal court other than 28 U.S.C. § 1334, and the Court concludes there is none. This factor favors abstention.

### 5.  The Degree of Relatedness or Remoteness of the Proceeding to the Bankruptcy Case

This factor overlaps with many of the factors discussed above. Walter is one of the largest non-defendant creditors in the main bankruptcy case, and she has filed a proof of claim. Furthermore, the Lease was negotiated between the Debtor and Walter, and, as discussed above, despite the fact that Walter has dismissed her claims against the Debtor, resolution of the issues surrounding the Lease will have a significant impact on the Debtor's estate and the allowance of Walter's proof of claim. Also, as explained above, because of the Debtor's involvement in Walter's claims against Waffle House, YSI, and the Flys, the Debtor may in fact be a necessary party to the Adversary Proceeding. Accordingly, this factor weighs against abstention. Broadhollow Funding,

390 B.R. at 139 ("[T]he result in this action could affect the debtors and Bank of America as a creditor of the debtors. Accordingly, this factor weighs against abstention.").

### 6. The Substance Rather Than the Form of an Asserted "Core" Proceeding

As discussed above, two of Walter's causes of action are core, and the rest are "related to" the Debtor's bankruptcy. This factor is neutral.

### 7. The Burden of the Bankruptcy Court's Docket

No party presented evidence that the burden of this Court's docket in any way affects abstention. The Court does not believe that hearing the Adversary Proceeding would burden its docket any more than it would a state court docket. As such, this factor is neutral.

### 8. The Likelihood that Removing the Proceedings to Bankruptcy Court Involved Forum Shopping

No party presented evidence that the removal of the Adversary Proceeding to this Court involved forum shopping. Counsel for Walter conceded that the only prejudice Walter would suffer from litigating her case before this Court was the potentially higher cost of litigation. The removal of the Adversary Proceeding simply shifted the case to a courtroom that is a few blocks from the state court in which it was filed, so Walter has no basis to object on forum non conveniens grounds. Accordingly, this factor weighs against abstention. Broadhollow Funding, 390 B.R. at 139.

### 9. The Existence of a Right to a Jury Trial

Walter has demanded a trial by jury of all her claims. Rule 39(a) of the Federal Rules of Civil Procedure, which applies to bankruptcy cases pursuant to Rule 9015(a) of the Federal Rules of Bankruptcy Procedure, provides that a party has a right to a jury trial unless a court determines that the right does not exist. Fed. R. Civ. P. 39(a); Fed. R. Bankr. P. 9015(a). After a general review of the right to a trial by jury provided by the Seventh Amendment, and how that right may be lost,

24

the Court will examine each of Walter's claims in turn.

### a. The Seventh Amendment Right to a Jury Trial

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. "Suits at common law" refers to suits where legal rights are to be ascertained, as opposed to equitable rights and remedies. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989); Magers v. Bonds (In re Bonds Distrib. Co., Inc.), No. 97-52130C-7W, 2000 WL 33682815, at *2 (Bankr. M.D.N.C. Nov. 15, 2000). The Seventh Amendment is meant to preserve the right to trial by jury as it existed in 1791, as well as in actions brought to enforce statutory rights analogous to common-law causes of action ordinarily decided in English courts in the 18th century, as opposed to those customarily heard by courts of equity or admiralty. Granfinanciera, 492 U.S. at 42.

> In deciding whether a particular action is a suit at law that triggers this important protection, we are instructed to apply the two-step test set forth in Granfinanciera. First, we ask "whether the action would have been deemed legal or equitable in 18th century England." Second, "'we examine the remedy sought and determine whether it is legal or equitable in nature.'" We then "balance the two, giving greater weight to the latter."

Pereira v. Farace, 413 F.3d 330, 337 (2d Cir. 2005) (citing Granfinanciera, 492 U.S. at 42; Germain v. Conn. Nat'l Bank, 988 F.2d 1323, 1328 (2d Cir.1993)).

The Seventh Amendment confers a right to a jury trial for a cause of action that is legal, rather than equitable in nature, and involves a private right rather than a public one. Granfinanciera, 492 U.S. at 42; Pereira, 413 F.3d at 337. The characterization of a claim as legal or equitable is a matter of federal law, even when the claim is based on a state-created right. Geltzer v. Kollel Mateh Efraim, LLC (In re Kollel Mateh Efraim, LLC), 406 B.R. 24, 27 (Bankr. S.D.N.Y. 2009); Official Comm. of Unsecured Creditors of iPCS, Inc. v. Sprint Corp. (In re iPCS, Inc.), 303 B.R. 527, 530

25

n.1 (Bankr. N.D. Ga. 2003).  A cause of action that seeks money damages is an action at law, not

equity.  In re Infotopia, 2007 WL 2859774, at *3;  Automotive Finance Corp. v. Ray Huffines

Chevrolet, Inc. (In re Parkway Sales and Leasing, Inc.), 411 B.R. 337, 351 (Bankr. E.D. Tex. 2009).

Even  if the plaintiff seeks a money judgment based on an equitable claim, the claim is generally

considered legal in nature.  Gecker v. Marathon Fin. Ins. Co., Inc. (In re Automotive Professionals,

Inc.), 389 B.R. 621, 625 (N.D. Ill. 2008).  Public rights are those that are closely intertwined with

a federal regulatory program and that neither belong to nor exist against the federal government.

Granfinanciera, 492 U.S. at 54.

### b.  Triggering the Claims Allowance Process

The filing of a claim against the estate makes any litigation against the claimant "part of

the claims allowance process." Langenkamp v. Culp, 498 U.S. 42, 45 (1990);  HA2003 Liquidating

Trust v. J.P. Morgan Partners (SBIC), LLC (In re HA-LO Industries, Inc.), 326 B.R. 116, 125

(Bankr. N.D. Ill. 2005).  When a creditor files a proof of claim, the creditor brings itself within the

equitable jurisdiction of the bankruptcy court and is not entitled to a jury trial.  Schubert v. Lucent

Techs., Inc. (In re Winstar Communications, Inc.), 554 F.3d 382, 406 (3d Cir. 2009); Exide

Technologies, 544 F.3d at 214-15; CBI Holding, 529 F.3d at 466.  The creditor who files a proof of

claim against a bankruptcy estate triggers the process of allowance and disallowance of claims, and

the creditor therefore subjects itself to the equitable jurisdiction of the bankruptcy court "in

proceedings affecting that claim."  Langenkamp, 498 U.S. at 44; CBI Holding, 529 F.3d at 466;

SNA Nut Co. v. The Haagen-Dazs Co., 302 F.3d 725, 730 (7th Cir. 2002).  The right to a jury trial

is not lost because it is waived; it is lost because the legal dispute has been transformed into an

equitable one.  Crown Paper Co. v. Fort James Corp. (In re Crown Vantage, Inc.), No. C-02-3838

26

MMC, 2007 WL 172321, at *2 (N.D. Cal. Jan. 18, 2007).

### c.  Walter Has a Right to Try Some of Her Claims to a Jury

#### I.  Breach of Contract Claims

Walter's first and fifth causes of action allege a breach of the Lease by the Debtor, Waffle House, and YSI.[4]  A claim for breach of contract is a legal claim that would have been brought in a court of law in 1791.  Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 569-70 (1990).  Walter seeks a money judgment, so the claim is legal in nature.  Automotive Professionals, 389 B.R. at 628 (holder of breach of contract claim has a right to a jury trial).  These causes of action meet the first prong of the Granfinanciera test for determining whether Walter has a right to a jury trial.

> Under Granfinanciera, once a court decides that the claims at issue are legal in nature, it must determine whether Congress has "withdrawn jurisdiction over [the Trustee's] action by courts of law and assigned it exclusively to non-Article III tribunals sitting without juries...."  In other words, the court must decide whether the Seventh Amendment confers on [the plaintiff] a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against it.  This question hinges on whether the plaintiff is pursuing private or public rights. The Court reasoned that, while "Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders, ... it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury."

Automotive Professionals, 389 B.R. at 628 (citations omitted).  Walter's claims for breach of contract are private, state-law causes of action as to which Congress lacks the power to eliminate the right to a trial by jury.  Thus, the second prong of the Granfinanciera test has been met.

_____

[4]While the Court has concluded that these two causes of action are core, the classification of a claim as core does not itself deprive a litigant of the right to a jury trial.  Mirant Corp., 337 B.R. at 120 (citing Germain, 988 F.2d at 1326–27).

"The right to a jury trial in bankruptcy exists only as long as the party does not assert a claim against the bankruptcy estate." Automotive Professionals, 389 B.R. at 628 (citing Granfinanciera, 492 U.S. at 57-58.   Walter filed a proof of claim in the Debtor's bankruptcy for "rent and taxes owed," attaching a copy of the Lease, which clearly triggers the claims allowance process and subjects Walter to the equitable jurisdiction of the Court.  SNA Nut, 302 F.3d at 730 (debtor sued creditor for breach of supply contracts and creditor filed proof of claim, which waived creditor's right to a jury trial); Malloy v. Zeeco, Inc. (In re Applied Thermal Sys., Inc.), 294 B.R. 784, 790-91 (Bankr. N.D. Okla. 2003) (right to a jury trial for a state law breach of contract claim is waived by the filing of a proof of claim).  For this reason, Walter has no right to a jury trial on these claims.

ii.  Fraud Claims

Walter's second and ninth causes of action allege fraud by the Debtor, Waffle House, YSI, and the Flys.  A claim for fraud is a legal claim that would have been brought in a court of law in 1791.  Buzard v. Houston, 119 U.S. 347, 352–53 (1886).  Walter seeks a money judgment, so the claim is legal in nature.  Automotive Professionals, 389 B.R. at 626 (fraud claim for money damages was a legal claim).  Walter's claims for fraud are private, state-law causes of action.  Id. at 628. Both prongs of the Granfinanciera test have been met.

The more difficult question is whether the filing of a proof of claim by Walter transforms a legal dispute into an equitable one.  Many courts limit the scope of the "waiver" of a plaintiff's jury trial right.  They hold that the plaintiff/creditor who files a proof of claim in a bankruptcy loses his jury trial right only with respect to claims whose resolution affect the allowance or disallowance of the proof of claim "or is otherwise so integral to restructuring the debtor-creditor relationship." CBI Holding, 529 F.3d at 466 (citing Germain, 988 F.2d at 1327); Northwest Airlines, 384 B.R. at 58;

28

EXDS, Inc. v. RK-Electric, Inc. (In re EXDS, Inc.), No. 01-10539-PJW, 2004 WL 503545, at *1 (D. Del. Mar. 5, 2004); HA-LO Industries, 326 B.R. at 124; Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.), 320 B.R. 513, 517 (Bankr. S.D.N.Y. 2005); contra Buena Vista Television v. Adelphia Communications Corp. (In re Adelphia Communications Corp.), 307 B.R. 404, 419-20 (Bankr. S.D.N.Y. 2004) ("The Copyright Owners did not seriously argue, as they could not, that the submission to bankruptcy court jurisdiction that results from the filing of a proof of claim is limited to the adjudication of the claim itself."). Walter's proof of claim concerns obligations that she alleges are due to her under the Lease; it has nothing to do with her claims of fraud. Walter has a right to a jury trial on these claims. See Automotive Professionals, 389 B.R. at 626 (any curtailment of the right to a jury trial should be strictly scrutinized).

### iii.  Unfair and Deceptive Trade Practices Claims

Walter's third and tenth causes of action allege that the Debtor, Waffle House, and YSI are liable for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 et seq.  She seeks a monetary judgment.  Section 75-1.1(a) states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).  Section 75-1.1(b) provides that "'commerce' includes all business activities, however denominated."  N.C. Gen. Stat. § 75-1.1(b).  Whether a claim based on an unfair and deceptive trade practice is a legal claim that would have been brought in a court of law in 1791 is unclear.[5]  However, Walter seeks solely monetary damages, and therefore the remedy

---

[5]Obviously no such claim existed in 1791.  Historically, a claim for "unfair or deceptive trade practices" might have been brought before court of law or a court of equity.  One court found that "deceptive" conduct based on intentional or reckless misrepresentation was similar to a common law claim of deceit, but also found that actions based on misrepresentation could also be brought in equity courts.  Puretest Ice Cream, Inc. v. Kraft, Inc., 614 F. Supp. 994, 997 (D.

sought is legal in nature.  Section 75-16 provides a private right of action for "any person" injured "by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter . . . ."  N.C. Gen. Stat. § 75-16; Marshall v. Miller, 276 S.E.2d 397, 400 (N.C. 1981).  Thus, although it is unclear whether the cause of action would historically have been treated as legal or equitable, the remedy sought is legal.   Since the second prong of the Granfinanciera test is given greater weight, the test has been met.  Walter's proof of claim has nothing to do with her claims for unfair and deceptive trade practices.  Therefore, she has a right to a jury trial on these claims.

### iv.  Claim for Piercing the Corporate Veil

Walter's fourth claim alleges that the Flys are the alter ego of the Debtor, and she seeks to pierce the Debtor's corporate veil.  A claim for piercing the corporate veil is a legal claim that would have been brought in a court of law in 1791.  Geltzer, 406 B.R. at 27-28 ("Here, the declaratory judgment action [for alter ego] is legal in nature and triable by a jury."); Bonds Distrib. Co., 2000 WL 33682815, at *8 (the majority of courts "have concluded that where [ alter ego ] claims seek to impose liability upon the defendant for the debts or obligations of another, the remedy sought is monetary damages and, hence, is legal in nature."); see also iPCS, 303 B.R. at 531 (complaint did not request a money judgment, so alter ego claim is equitable in nature and plaintiff has no right to a jury trial).  Walter's alter ego claim seeks to impose liability on the Flys for the Debtor's

---

Mass. 1985) (citing Prosser, Law of Torts, § 105 p. 687 (3d ed. 1971)).  Thus, "[t]he important difference between cases founded on misrepresentation lodged in the common law courts rather than the equity courts was the nature of the remedy sought." Id.  In Puretest, the remedy sought included an injunction.  Therefore, the court concluded that it was an equitable claim, and no jury trial right existed.  By contrast, when a plaintiff sought only actual and treble damages under the South Carolina Unfair Trade Practices Act, it was a legal claim, and a Seventh Amendment jury trial right existed. In re Friedberg, 131 B.R. 6, 13-14 (S.D.N.Y. 1991).

obligations, and as such, seeks a monetary remedy. An alter ego claim is a private action under state law. See, e.g., Fischer Inv. Capital, Inc. v. Catawba Dev. Corp., 689 S.E.2d 143, 155 (N.C. App. 2009). Both prongs of the Granfinanciera test have been met. Walter's proof of claim has nothing to do with her claim for piercing the corporate veil. She has a right to a jury trial on this claim.

### v. Successor Liability Claim

Walter's sixth cause of action alleges that Waffle House and YSI expressly or impliedly agreed to assume all of the debts and liabilities of the Debtor. A claim for successor liability is a legal claim that would have been brought in a court of law in 1791. Bonds Distrib. Co., 2000 WL 33682815, at *10 ("Thus, if the plaintiff prevails on this claim, the relief sought is for a determination to be made as to the amount of the Debtor's debts and that a judgment be entered adjudging that the plaintiff have and recover that sum of money from Bonds, Inc. This court concludes that such a remedy is legal in nature involving the type of relief in which a defendant traditionally has been entitled to a jury trial."). Walter seeks a money judgment against Waffle House and YSI. The successor liability claim is a private, state-law cause of action. See, e.g., G.P. Publications, Inc. v. Quebecor Printing-St. Paul, Inc., 481 S.E.2d 674, 680 (N.C. App. 1997). Both prongs of the Granfinanciera test have been met. Walter's proof of claim has nothing to do with her claim for successor liability. She has a right to a jury trial on this claim.

### vi. Lender Liability Claim

Walter's seventh cause of action alleges that Waffle House and YSI dominated and controlled the Debtor, causing the Debtor to become a mere instrumentality of Waffle House and YSI , which proximately harmed Walter. Walter's claim is a legal claim that, if it existed at the time, would have been brought in a court of law in 1791. Germain, 988 F.2d at 1328-30. It is a

31

private, state-law cause of action.  Id. at 1331-32.  Walter seeks a money judgment against Waffle

House and YSI.  Therefore, both prongs of the Granfinanciera test have been met.  Walter's proof

of claim has nothing to do with her claim for lender liability.  She has a right to a jury trial on this

claim.

### vii.  Interference with Contract Claim

Walter's eighth cause of action alleges that Waffle House and YSI interfered with her

contract with the Debtor (i.e., the Lease).  She seeks a money judgment against Waffle House and

YSI.  A claim for tortious interference with contract is a legal claim.  In re Jensen, 946 F.2d 369, 371

(5th Cir.1991) (overruled on other grounds) ("Tortious interference with contractual or business

relations was not a generally recognized cause of action until the 1850's, long after the enactment

of the Seventh Amendment. However, it is analogous to certain causes of action that were brought

in courts of law in the 18th century in order to protect contractual relationships from third-party

interferences.") (citations omitted); Parkway Sales, 411 B.R. at 351 ("Additionally, AFC and DSC's

claims alleging tortious interference with contract and civil conspiracy are claims for which DAA

has a Seventh Amendment right to a jury trial.") (citing Jensen, 946 F.2d at 371).  Walter's claim

for tortious interference with contract is a private, state law cause of action.  See, e.g. Gupton v. Son-

Lan Dev. Co., 695 S.E.2d 763, 770 (N.C. App. 2010).  Both prongs of the Granfinanciera test have

been met. Walter's proof of claim has nothing to do with her claim for tortious interference with

contract.  She has a right to a jury trial on this claim.

### viii.  Conspiracy Claim

Walter's eleventh cause of action alleges that the debtor, Waffle House, and YSI entered into

a conspiracy to force her into granting rent reductions under the Lease.  A claim for conspiracy is

a legal claim that would have been brought in a court of law in 1791. <u>Jensen</u>, 946 F.2d at 371 ("civil conspiracy has its roots in criminal conspiracy, which was of course triable before a jury in a court of law"). Additionally, Walter's claim is a private, state law cause of action seeking money damages, and therefore both prongs of the <u>Granfinanciera</u> test have been met. <u>Hays v. Equitex, Inc.</u> <u>(In re RDM Sports Group, Inc.)</u>, 260 B.R. 915, 919-20 (Bankr. N.D. Ga. 2001) (finding a jury trial right to a civil conspiracy claim under the <u>Granfinanciera</u> test). Walter's proof of claim has nothing to do with her claim for conspiracy. She has a right to a jury trial on this claim.

ix.  Conclusion

Walter has a right to a jury trial on nine of her eleven claims. This factor favors abstention. <u>Kerusa</u>, 2004 WL 1048239, at *6 ("Because a bankruptcy court cannot conduct a jury trial absent special designation by the district court and the consent of all parties, 28 U.S.C. § 157(e), the presence of a Seventh Amendment jury trial right in a removed action weighs heavily in favor of remand.").

### 10.  Whether Non-Debtor Parties Are Involved in the Proceeding

Non-debtor parties are involved in this proceeding, which usually favors abstention. <u>Broadhollow Funding</u>, 390 B.R. at 139 ("In this proceeding, three of the four litigants are non-debtors. This factor favors abstention."). However, they are the same non-debtor parties that are involved in the Georgia Action that is now before this Court. All of them filed proofs of claim in the Debtor's bankruptcy. Furthermore, Waffle House and YSI filed two responses in opposition to the Motion to Remand and appeared through counsel at the hearing on the Motion to Remand. Accordingly, this factor is at best neutral.

### 11.  Conclusion

33

"Evaluating these twelve factors is not a mathematical formula." <u>Monmouth Investor</u>, 2010 WL 143687, at *5 (quoting <u>Trans World Airlines, Inc. v. Karabu Corp.</u>, 196 B.R. 711, 715 (Bankr. D. Del. 1996)).   However, the majority of factors weigh against the exercise of permissive abstention.

## E.  Equitable Remand

Section 1452 (b) of Title 28 of the United States Code states: "The court to which such claim or cause of action is removed may remand such claim or cause of action <u>on any equitable ground</u>." 28 U.S.C. § 1452(b) (emphasis added). Equitable remand is to be determined by reference to fourteen factors: (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends remand; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. <u>Nilsen</u>, 419 B.R. at 820; <u>Blanton</u>, 260 B.R. at 265.

Many courts have noted that the permissive abstention analysis of Section 1334(c)(1) is essentially identical to the equitable remand analysis of Section 1452(b).  <u>See</u>, <u>e.g.</u>, <u>Digital Satellite</u>

34

Lenders, LLC v. Ferchill, No. 03 Civ. 8803(RWS), 2004 WL 1794502, at *5 (S.D.N.Y. Aug. 10, 2004); Blanton, 260 B.R. at 265 n. 5; Fledderman v. Glunk (In re Glunk), No. 05-31656-ELF, 2006 WL 6659552, at *6 (Bankr. E.D. Pa. Aug. 18, 2006); Roman Catholic Archbishop, 338 B.R. at 420. The factors are the same except for the two additional factors that are considered in a determination concerning equitable redemption: comity and the possibility of prejudice to other parties in the action.  These are the only two factors that the Court has not already addressed.

Considerations of comity are neutral.  Federal courts will give deference to state courts when appropriate under the notions of comity.  See, e.g., In re Arcadius Dev., LLC, No. 07–01462–5–SWH, 2010 WL 2404339, at *4 (Bankr. E.D.N.C. 2010) (deferring to the North Carolina Business Court when complex and novel issues of North Carolina were involved). However, neither the Georgia Action nor the Adversary Proceeding have progressed much, if any, beyond the pleading stage, nor does this case involve novel state law issues.

As for prejudice to the removed parties, the only party that has not stated a preference for litigation of the Adversary Proceeding in this Court is Walter.  Her counsel speculates that Walter might be prejudiced by the increased cost to litigate in federal court, a position supported by neither evidence nor argument.  It is hard to imagine how moving the case to a courtroom a few blocks away will prejudice anyone, including Walter.

In ML Media Partners, the court considered a motion for equitable remand in a situation similar to the facts before the Court.  ML Media Partners, 285 B.R. at 147.  Two related adversary proceedings were removed to bankruptcy court from state court after a Chapter 11 filing.  Id. at 129-130.  In the course of the court's remand analysis, it considered whether the movant had a right to a jury trial, as follows:

35

The right to jury trial, in this Court's view, tilts in favor of remand, but to only a very minor extent. Many of [the plaintiff's] claims have been and reasonably can be expected to be for equitable relief, for which there is no right to a jury trial in any event. On some matters, one or more of the litigants might wish a jury trial, which a bankruptcy judge could not preside over in the absence of consent, but which a district judge could; in this respect, this factor does favor remand, but it is tempered substantially by the fact that [the plaintiff's] claims could be heard, if necessary, by a district judge. This Court gives this factor some weight but not very great weight, as in this Court's view, the most important concerns are that [the plaintiff's] claims against all defendants be litigated together and in a coordinated way, and that they be coordinated with proceedings in the bankruptcy court. These concerns are far more important, in this Court's view, than concerns as to whether a bankruptcy judge, on the one hand, or a district judge, on the other, handles any ultimate jury trial.

Id. at 147 (footnotes omitted). This passage encapsulates much of the reasoning of the Court in this matter. The majority of factors weigh against the exercise of equitable remand.

## CONCLUSION

Because mandatory abstention does not apply, and because the majority of the factors in this case weigh against permissive abstention and equitable remand, the Motion to Remand will be denied. For the time being, the Adversary Proceeding will proceed in this Court.[6] The Court

---

[6]Bankruptcy courts are not divested of pretrial jurisdiction over matters which they ultimately may be unable to decide. Nilsen, 419 B.R. at 820 ("[W]e hold that any statutory constraint on the court's jurisdiction under 28 U.S.C. § 157(b)(5) [personal injury claims] does not extend to pre-trial matters."); Picard v. Cohmad Securities Corp., No. 09 Civ. 7655(LLS), 2009 WL 4729927, at *1 (S.D.N.Y. Dec. 10, 2009) ("The bankruptcy adversary proceeding is in a preliminary stage, with significant discovery and motion practice remaining to be done. Movants do not consent to a jury trial in the Bankruptcy Court, so the District Court will conduct the jury trial if it is required after all pretrial proceedings have been concluded.") (footnote omitted); Veyance Technologies, 2009 WL 4496051, at *2 n.3 ("Even if this action is a non-core proceeding, the Bankruptcy Court may still adjudicate pretrial matters not requiring the entry of final orders or judgments."); Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc., No. 09-0249-WS-N, 2009 WL 3756708, at *4 n.9 (S.D. Ala. Nov. 9, 2009) ("Should any of the claims joined herein reach readiness for jury trial, and should there not be unanimous consent to conducting the jury trial before the Bankruptcy Judge pursuant to § 157(e), then withdrawal of the referral will be appropriate."); Thomason Auto Group, LLC v. Ferla, No. 08-4143 (JLL), 2009 WL 3491163, at *6 (D.N.J. Oct. 23, 2009) ("[E]ven when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not preside over

realizes that issues involving the right to a jury trial will eventually need to be addressed by the

parties. They can agree to a bench trial before this Court. 28 U.S.C. § 157(c)(2). They can agree

to a jury trial before this Court. 28 U.S.C. § 157(e); Fed. R. Bankr. P. 9015(b). They can move the

United States District Court to withdraw the reference so that a jury trial may be held there. 28

U.S.C. § 157(d); see, e.g., Hutson v. Bay Harbour Mgmt., L.C., No. 1:06CV01037, 2007 WL

1434834, at *1 (M.D.N.C. May 11, 2007) (withdrawing a matter from the bankruptcy court solely

_____

[an] adversary proceeding and adjudicate discovery disputes and motions only until such time as
the case is ready for trial.") (quoting In re Chet Decker, Inc., No. 06-3658, 2006 WL 3019663, at
*8 (D.N.J. Oct. 23, 2006)); Official Comm. of Unsecured Creditors of Bayonne Med. Center v.
Evans (In re Bayonne Med. Center), No. 09-3643 (JLL), 2009 WL 3417596, at *2 (D.N.J. Oct.
20, 2009) ("Regardless of whether WS & B consents to them ultimately being tried in the
Bankruptcy Court, a determination of whether claims are core or non-core and any related
intermediate rulings on these issues are best made by the Bankruptcy Court in the first
instance."); In re Creekside Vineyards, 2009 WL 3378989, at *3 ("The Ninth Circuit found that
automatic withdrawal is not required first because 'allowing the bankruptcy court to retain
jurisdiction over pre-trial matters, does not abridge a party's Seventh Amendment right to a jury
trial.' The court explained, 'even if a bankruptcy court were to rule on a dispositive motion, it
would not affect a party's Seventh Amendment right to a jury trial, as these motions merely
address whether trial is necessary at all.'") (citations omitted); Youngman v. Hoffman (In re
Stamou), No. 07-28685 (DHS), 2009 WL 3260639, at *1 (D.N.J. Oct. 9, 2009) ("[T]his Court
finds that the better course, for uniformity and efficiency in bankruptcy administration and to
expedite the bankruptcy process, is to not interfere with the Bankruptcy Court's ongoing
management of the case, leaving it with the Bankruptcy Court until all pre-trial matters are
resolved-i.e. 'until such time as a jury trial becomes necessary.'"); Centrix Financial Liquidating
Trust v. Sutton (In re Centrix Financial, LLC), No. 09-cv-00088-PAB, 2009 WL 1605826, at *3-
4 (D. Colo. June 8, 2009) ("With respect to a litigant's right to a jury trial, allowing the
bankruptcy court to supervise discovery, conduct pretrial conferences, and rule on pretrial
motions-including dispositive motions-does not infringe on the right to trial by jury. Motions to
dismiss and motions for summary judgment 'merely involve legal issues as to whether any trial
is necessary.'") (citations omitted); Burtch v. Dent and Co. Inc. (In re Circle of Yoakum), No.
CIV A. 06-327-KAJ, 2006 WL 2346462, at *2 (D. Del. June 23, 2006) ("[The defendant's] right
to a jury trial will not be affected by the Bankruptcy Court conducting the pretrial
proceedings."); American Classic Voyages Co. v. Westaff (USA), Inc. (In re American Classic
Voyages Co.), 337 B.R. 509, 511-12 (D. Del. 2006) ("A District Court may consider a demand
for a jury trial insufficient cause for discretionary withdrawal if the motion is made at an early
stage of the proceedings and dispositive motions may resolve the matter.").

for the purpose of conducting a jury trial).

  This memorandum opinion constitutes the Court's findings of fact and conclusions of law.

A separate order will be entered contemporaneously herewith pursuant to Fed. R. Bankr. P. 9021.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FREEWAY FOODS OF | ) | Case No. 10-11282 |
| GREENSBORO, INC. | ) | Chapter 7 |
| | ) | |
|       Debtor. | ) | |
| _____ | ) | |
| JANE H. WALTER, | ) | |
| | ) | |
|       Plaintiff, | ) | Adv. No. 10-02057 |
| v. | ) | |
| | ) | |
| FREEWAY FOODS, INC., FREEWAY | ) | |
| FOODS OF GREENSBORO, INC., | ) | |
| GARY M. FLY, individually, LYNNE R. | ) | |
| FLY, individually, YELLOW SIGN, INC., | ) | |
| and WAFFLE HOUSE, INC. | ) | |
| | ) | |
|       Defendants. | ) | |
| _____ | ) | |

## PARTIES IN INTEREST

James C. Adams, II, Esq.

Rachel Scott Decker, Esq.

J. Patrick Haywood, Esq.

James C. Lanik, Esq.

William P. Miller, Esq., Trustee

William B. Sullivan, Esq.

Michael D. West, Esq., Bankruptcy Administrator

39