# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FREEWAY FOODS OF | ) | Case No. 10-11282 |
| GREENSBORO, INC. | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JANE H. WALTER, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 10-02057 |
| v. | ) | |
| | ) | |
| FREEWAY FOODS, INC., FREEWAY | ) | |
| FOODS OF GREENSBORO, INC., | ) | |
| GARY M. FLY, individually, LYNNE R. | ) | |
| FLY, individually, YELLOW SIGN, INC., | ) | |
| and WAFFLE HOUSE, INC., and | ) | |
| KIMBERLY S. KRAFT, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This matter came before the Court on January 30, 2012, upon the Motion for Judgment on the Pleadings (the "Motion") filed by Yellow Sign, Inc. ("YSI"), Waffle House, Inc. ("Waffle House"), and Kimberly H. Kraft ("Kraft" and together with YSI and Waffle House, the "Corporate Defendants") on July 25, 2011, and the Opposition to the Motion filed by the above-captioned plaintiff ("Walter") on January 24, 2012. At the hearing, Rachel S. Decker and J. Patrick Haywood appeared on behalf of Walter, and William B. Sullivan appeared on behalf of the Corporate Defendants.

### I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which this Court has the jurisdiction to hear and determine.

## II. FACTS

The facts of this case are fully set forth in the Memorandum Opinion Denying Plaintiff's Motion to Remand, entered by this Court on May 24, 2011, and are incorporated by reference. They will not be repeated here.

## III. ANALYSIS

### A.     Standard of Review

Motions under Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure permit a party to challenge the legal sufficiency of his opponent's allegations. While they are different motions, the standards for analyzing each motion are essentially the same. Alexander v. Greensboro, -- F.Supp.2d --, 2011 WL 2730707, at *1 (M.D.N.C. July 13, 2011) (citing Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002)); Gregory v. Shatzman, No. 1:08CV497, 2009 WL 3151867, at *1 (M.D.N.C. Sept. 24, 2009) ("[T]he standard for a motion for judgment on the pleadings is the same as that for a motion to dismiss under Rule 12(b)(6)"); Sherman v. Litton Loan Servicing, L.P., -- F.Supp.2d --, 2011 WL 2634097, at *3 (E.D. Va. July 5, 2011) ("[A] motion under 12(c)… is assessed under the same standard that applies to a Rule 12(b)(6) motion.") (quoting Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009)). However, given the fact that an answer must be filed before a Rule 12(c) motion may be made, a court may consider a broader scope of material when analyzing a motion under Rule 12(c).

**1. Motions to Dismiss Under Rule 12(b)(6)**

In order to survive a motion to dismiss for a failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Garcia-Contreras v. Brock & Scott, PLLC, 755 F. Supp. 2d 808, 817 (M.D.N.C. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). When analyzing a Rule 12(b)(6) motion to dismiss, a court should consider the "facts in the light most favorable to the plaintiff." Id. However, legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments need not be accepted as true. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In other words, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Sherman, 2011 WL 2634097, at *3 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) must be made "before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). Moreover, such a motion may only be filed by a party against whom a claim has been made. In other words, only the defendant to a certain claim is able to bring a Rule 12(b)(6) motion. As a result, only the sufficiency of the complaint is available for the court to analyze in determining whether the motion should be granted.

**2. Motions for Judgment on the Pleadings Under Rule 12(c)**

Pursuant to Rule 12(c), "after the pleadings are closed—but early enough not to delay trial," any party may make a motion for judgment on the pleadings. FED. R. CIV. P. 12(c). Such a motion should be granted "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Garcia-Contreras, 775 F.Supp.2d. at 817. Similar to the motion under Rule 12(b)(6), the "Court must assume 'the facts alleged in the complaint are

3

true and draw all reasonable factual inferences in [the non-movant's] favor." Price v. Brock & Scott, PLLC, No. 1:10CV40, 2011 WL 1326934, at *10 (M.D.N.C. April 6, 2011) (quoting Burbach Broad Co., 278 F.3d at 406). Unlike on a Rule 12(b)(6) motion, however, on a Rule 12(c) motion the court may consider the answer as well. Rinaldi v. CCX, Inc., No. 3:05–CV–108, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008). However, any factual allegations in the answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991). With regard to a Rule 12(c) motion, the defendant "cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the] complaint," because "Plaintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied.'" Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (quoting Jadoff, 140 F.R.D. at 332); FED. R. CIV. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided.").

Although this framework is more expansive than under Rule 12(b)(6), a court "cannot consider evidence outside the pleadings without converting [the] motion into one for summary judgment under Fed. R. Civ. P. 56 and giving both parties a chance to present further evidence." Gregory v. Schatzman, No. 1:08CV497, 2009 WL 3151867, at *3 (M.D.N.C. Sept. 24, 2009); A.S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

Accordingly, where a party moves for judgment on the pleadings under Rule 12(c), the court may consider the complaint, facts in the answer that do not expand on or controvert facts in

4

the complaint, and judicially noticed facts, and should assume the facts alleged in the complaint are true. Price, 2011 WL 1326934, at *10. "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F.Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir.1984), aff'd, 472 U.S. 479 (1985); Jadoff, 140 F.R.D. at 331; 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2004). Granting a Rule 12(c) motion is proper when, drawing all reasonable factual inferences in favor of the non-movant, there are "no material facts in dispute and the moving party is entitled to judgment as a matter of law." Garcia-Contreras, 755 F. Supp. 2d at 817.

**B.     Walter's Claims**

Walter's amended complaint sets forth fourteen causes of action, but only the last ten are asserted against the Corporate Defendants: (5) breach of lease agreement against Waffle House and YSI; (6) successor liability against Waffle House and YSI; (7) lender liability against Waffle House and YSI; (8) interference with contract against Waffle House and YSI; (9) fraud against Waffle House and YSI; (10) unfair and deceptive trade practices against Waffle House and YSI; (11) conspiracy against all of the above-captioned defendants; (12) interference with contract against Kraft; (13) fraud against Kraft;[1] and (14) unfair and deceptive trade practices against Kraft.[2]

    **1.     Breach of Lease**

---

[1] In the amended complaint, this cause of action is duplicatively titled "Twelfth Cause of Action." To avoid confusion, the Court will refer to this as the Thirteenth Cause of Action.
[2] In the amended complaint, this cause of action is erroneously titled "Thirteenth Cause of Action." To avoid confusion, the Court will refer to this as the Fourteenth Cause of action.

Walter asserts in her Fifth Cause of Action that the lease that she executed with the Debtor was validly assigned to Waffle House and YSI pursuant to the terms of the lease itself. She further alleges that Waffle House and YSI breached that lease by failing to pay rents due under it.

To support a claim for breach of lease, a "plaintiff must allege sufficient facts to show (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000); see also Jackson v. Carolina Hardwood Co., Inc., 463 S.E.2d 571, 572 (N.C. Ct. App. 1995) (requiring a showing that "valid contract existed which terms were breached by the defendant."). However, where a claim implicates the enforceability of the contract, rather than its underlying validity, a motion to dismiss or for judgment on the pleadings may not be warranted—for example, in cases where one party attempts to use the Statue of Frauds as an affirmative defense. See N.C. GEN. STAT. § 8(c); see also Green v. Harbour, 437 S.E.2d 719, 720 (N.C. Ct. App. 1994).[3] As a general rule, the Statute of Frauds cannot be utilized to demonstrate the invalidity of a contract on a motion to dismiss for a failure to state a claim on which relief can be granted. See Brooks Distrib. Co. v. Pugh, 378 S.E.2d 31, 31 (N.C. 1989) (adopting Justice Cozart's dissenting opinion from Court of Appeals) (91 N.C. App. 715, 723-24). Essentially, raising this defense creates issues of material fact that require evidence to determine. See, e.g., Brooks v. Hackney, 404 S.E.2d 854, 861 (N.C. 1991) (noting

---

[3]Pursuant to North Carolina's statute of frauds, in order for a lease to be valid, it must include four elements in writing: "(1) "identity of [lessor] and [lessee], (2) description of land to be leased, (3) a statement of the term of the lease, and (4) rental or other consideration to be paid." Purchase Nursery, Inc. v. Edgerton, 153 N.C. App. 156, 161 (2002) (internal citations omitted). Moreover, where the lease exceeds three years in duration, it "shall be void unless said contract or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." N.C. GEN. STAT. § 22-2.

proof of actual misrepresentation may have estopped a plaintiff from denying enforceability of contract through statute of frauds); Reichler v. Tillman, 203 S.E.2d 68, 70-71 (N.C. Ct. App. 1974) (denying motion for judgment on the pleadings for failure of wife to sign sale contract for land as tenants by the entirety, even though statutorily required, because it could have come out later through evidence that the statute was otherwise complied with if the husband was acting as an agent for the wife).

In this case, Walter has sufficiently pled a cause of action for a breach of lease against Waffle House and YSI. While the Corporate Defendants argue that Walter cannot satisfy the requirements of the Statute of Frauds to prove that her lease was enforceable, such an argument merely creates an issue of material fact—it defeats, rather than supports, the Corporate Defendants' Motion. Accordingly, the Motion is denied as to Walter's Fifth Cause of Action.

### 2.     Successor Liability

Walter asserts in her Sixth Cause of Action that, because the lease was validly assigned to Waffle House and YSI, they are liable for the Debtor's debts as a successor.

Generally, a corporation that purchases all, or substantially all, of another corporation's assets is not liable for the selling corporation's debts or liabilities. Budd Tire v. Pierce, 370 S.E.2d 267, 269 (N.C. Ct. App. 1988). Notwithstanding this general rule, certain equitable exceptions have emerged that seek to balance protecting a predecessor's creditors with respecting the separateness of the corporate entity. Id. at 270. Specifically, successor liability can be found where: (1) the purchasing corporation expressly or impliedly agrees to assume debts or liabilities; (2) the transfer is a de facto merger; (3) the purpose of the transfer was to

defraud creditors; or (4) the purchasing corporation is a mere continuation of the purchased corporation. Id. at 269.

While the Corporate Defendants have argued that the lease was not validly assigned, as discussed above, this argument merely creates an issue of material fact that necessitates a presentation of evidence to fully determine. Walter has alleged that the lease was validly assigned to Waffle House and YSI pursuant to the plain language of the lease. Considering all facts in the light most favorable to Walter, she has pled a cause of action for successor liability sufficient to withstand a motion for judgment on the pleadings.[4] Accordingly, the Motion is denied as to Walter's Sixth Cause of Action.

### 3.    Lender Liability—Instrumentality/Agency

Walter asserts in her Seventh Cause of Action that after YSI purchased the Debtor's loan from SunTrust, the purpose of the Debtor was to operate solely for the benefit of YSI and Waffle House, by, among other things, obtaining favorable lease terms that would ultimately provide a benefit only to YSI and Waffle House. Walter alleges that YSI and Waffle House took over the management of the Debtor's business, dominated and controlled the Debtor such that the Debtor became a mere instrumentality or agent of YSI and Waffle House, and directed the Debtor to breach its lease with Walter. Walter alleges that as a result, she suffered losses in excess of $10,000.

---

[4] Because the Court concludes that Walter has sufficiently pled a cause of action for successor liability pursuant to the first theory—that is, that the creditor agreed to assume the debts—it is not necessary for the Court to address whether her complaint sufficiently pled such a cause of action under any of the alternative theories for liability. However, the complaint also contains factual allegations that could support a cause of action under the third or fourth theories of successor liability as well.

To date, there are no other cases in North Carolina that apply the instrumentality rule to a lender liability action—this rule comes into play most often in actions to pierce the corporate veil and hold a parent company liable for a subsidiary or related entity's torts. Assuming arguendo that such a cause of action exists to hold a lender liable under North Carolina law, in order for a plaintiff to succeed on a claim for instrumentality, she must establish:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

B–W Acceptance Corp. v. Spencer, 149 S.E.2d 570, 576 (N.C. 1966).

Here, Walter has not sufficiently pled facts to support a claim for instrumentality. While she alleges that YSI and Waffle House took over the Debtor's management, and dominated and controlled it, she includes no facts to support her claims that the Debtor was dominated or controlled by YSI and/or Waffle House. In addition, such allegations are belied by the fact that the Debtor has itself brought counterclaims against these entities for the same actions in a related adversary proceeding—counterclaims upon which Walter bases her own claims in this proceeding. Walter's allegations of domination and control in this cause of action amount to conclusory assertions that, under the standard set forth in Iqbal and Twombly, cannot provide a basis for her claim. See Iqbal, 129 S. Ct. at 1951. Accordingly, the Motion should be granted as to the Seventh Cause of Action.

    **4.**    **The Interference With Contract Claims**

Walter asserts in her Eighth and Twelfth Causes of Action that the Corporate Defendants interfered with her lease with the Debtor. In order to sufficiently bring a claim for tortious interference with a contract, a party must allege five elements:

> "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff."

Embree Const. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992). Here, it is undisputed that the lease was valid as between Walter and the Debtor. Walter also alleges that the Corporate Defendants had knowledge of the lease, and even specifically alleges that the Corporate Defendants played a role in crafting the lease, by requiring the inclusion of paragraph 12. Walter further alleges that the Corporate Defendants perpetrated a scheme by which they induced the Debtor to breach the lease, without justification, that resulted in her loss of rent profits. The Corporate Defendants argue that because the lease was not recorded, it is not enforceable against them as third-parties to the contract and Walter's claim must fail as a matter of law.

Where a complaint fails to sufficiently plead the existence of a valid contract, tortious interference is inapplicable, as there is no contract with which to interfere. Cobra Capital, LLC v. RF Nitro Commc'ns, Inc., 266 F.Supp.2d 432, 439 (M.D.N.C. 2003). However, as discussed above, if there is a dispute as to the enforceability—as opposed to the validity—of the contract, dismissal is unwarranted. See, e.g., Childress v. Abeles, 84 S.E.2d 176, 184 (N.C. 1954) ("The overwhelming weight of authority is that the defense of the Statute of Frauds is personal to the parties to the contract, and such a defense is not available to strangers to the agreement.");

RESTATEMENT (SECOND) OF CONTRACTS § 13 (noting that even where "the third person may be in a position to avoid liability for any breach … [t]he defendant actor is not, however, for that reason free to interfere with performance of the contract before it is avoided."). Accordingly, because a failure to record a lease speaks to its enforceability against third-parties, as opposed to its validity, a claim for tortious interference is not barred simply because a lease has not been recorded. Kent v. Humphries, 281 S.E.2d 43, 46 (N.C. 1981).

Because the Corporate Defendants' argument is without merit, and Walter has sufficiently pled the elements of tortious interference with the lease, the Motion is denied as to the Eighth and Twelfth Causes of Action.

### 5. The Fraud Claims

Walter asserts in her Ninth and Thirteenth Causes of Action that the Corporate Defendants engaged in a scheme whereby they made false representations that the Debtor was on the verge of bankruptcy and rent concessions would be required in order for Walter to keep the Debtor as a tenant. Walter alleges that the Corporate Defendants knowingly and intentionally made these statements in order to gain rent concessions from Walter. Walter alleges that she relied on these misrepresentations when she agreed to grant the Debtor rent concessions, in an effort to avoid more significant losses that she believed would be caused by the Debtor's bankruptcy. Walter also alleges that, as a result of her reliance on these misrepresentations regarding the Debtor's financial condition, she suffered damages in excess of $10,000.

Under North Carolina law, in order to state a claim for fraud, a plaintiff must allege (1) a false, material representation of a past or existing fact; (2) reasonably calculated to deceive; (3) made with the intention to deceive; (4) which does in fact deceive; and (5) results in damage.

Phelps-Dickson Bldrs, LLC v. Amerimann Partners, 617 S.E.2d 664, 670 (N.C. Ct. App. 2005); Hunter v. Guardian Life Ins. Co., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002).  Rule 9 of the Federal Rules of Civil Procedure requires that a plaintiff plead fraud with particularity, which can be satisfied by pleading the time, place, and content of the representation, the identity of the person making the representation, and what was obtained by said representation.  See Powell v. Wold, 362 S.E.2d 796, 799 (N.C. Ct. App. 1987).

In this case, Walter has pled ample, detailed facts outlining the fraudulent misrepresentations that she alleges the Corporate Defendants made, and even attaches correspondence containing such alleged misrepresentations. The Corporate Defendants argue that the statements that Walter alleges were misrepresentations were merely statements of opinion that later turned out to be false; Walter, therefore, has not sufficiently pled the necessary intent to deceive.  However, the second sentence of Rule 9(b) permits knowledge or intent to be averred generally, so long as the plaintiff pleads sufficient facts or events that give rise to an inference of intent.  FED. R. CIV. P. 9(b); see, e.g., In re DDAVP Direct Purchaser Antitrust Litigation, 585 F.3d 677, 695 (2d Cir. 2009) ("'Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge.'") (quoting Devaney v. Chester, 813 F.2d 566, 568 (2d Cir. 1987)); Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009) ("Although 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."); Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 342 (5th Cir. 2008).

12

The Corporate Defendants also argue that Walter has not sufficiently established that they had any duty to disclose information to Walter, as no fiduciary relationship existed between them. The general rule in North Carolina is that a claim for fraud will not lie for failure to disclose a fact, unless a duty exists between the parties. McFayden v. Duke Univ., 786 F.Supp.2d 887, 988 (M.D.N.C. 2011). However, "North Carolina courts have recognized that while a defendant may not initially be under a duty to speak, once the defendant does speak, he is required to make a full and fair disclosure of the matters discussed." Id.

Here, Walter has alleged sufficient facts to support her claim for fraud against the Corporate Defendants. Construing all facts in the light most favorable to the plaintiff, Walter's detailed allegations regarding the scheme that the Corporate Defendants undertook to execute, in addition to her attachment of correspondence between the parties, allows a reasonable inference of fraudulent intent. In addition, North Carolina law requires that once a party has spoken, he must make a full and fair disclosure. The Corporate Defendants' counterarguments merely raise issues of material fact as to Walter's allegations that would warrant additional evidence to determine. Accordingly, the Motion is denied as to the Ninth and Thirteenth causes of action.

### 6. The Unfair and Deceptive Trade Practices Claims

Walter asserts in her Tenth and Fourteenth Causes of Action that the Corporate Defendants engaged in an elaborate scheme to extract rent concessions from her. These allegations are essentially identical to those on which Walter relies as the basis for her fraud claim.

In order to establish a prima facie claim for unfair and deceptive trade practices ("UDTPA") under North Carolina law, a plaintiff "must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and

(3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 710 (N.C. 2001); see also N.C. GEN. STAT. § 75-1.1(a). A determination as to whether certain acts are unfair or deceptive involves a highly fact-specific inquiry. Budd Tire, 370 S.E.2d at 271. Generally, an act is unfair if it "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive if "it has the capacity or tendency to deceive." Norman v. Loomis Fargo & Co., 123 F. Supp. 2d 985, 989 (W.D.N.C. 2000). The actions must amount to more than naturally competitive behavior. Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d 785, 798-99 (E.D.N.C. 2009) (noting that "a party must allege some type of egregious or aggravating circumstances"). Neither a mere breach of warranty nor a breach of contract, even if intentional, rises to the level of an unfair or deceptive trade practice. Id. at 799; see also Norman, 123 F.Supp.2d at 989. However, allegations of fraud or intent are not required to establish a prima facie claim based on the UDTPA. Bolton Corp. v. T.A. Loving Co., 380 S.E.2d 796, 808 (N.C. Ct. App. 1989). In addition, the concept of "'unfairness' is broader than and includes the concept of 'deception'" and a plaintiff need not establish that an act was both unfair and deceptive. Id.

The second element in this cause of action is defined broadly, as the definition of "commerce" is intended to be inclusive and broad, sweeping in any "business activity, however denominated." Dalton, 548 S.E.2d at 711. Finally, for purposes of this cause of action, proximate cause means:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

Strates Shows, Inc. v. Amusements of Am., Inc., 646 S.E.2d 418, 424 (N.C. Ct. App. 2007). Thus, in order to satisfy the third element, a clear link must be established between the conduct and the injury. Id.

In this case, as outlined above in the discussion of her fraud claims, Walter alleges in detail that the Corporate Defendants engaged in an elaborate scheme to coerce her into granting rent concessions. Specifically, she alleges that they made false representations that the Debtor was on the verge of bankruptcy and that rent concessions would be required in order for Walter to keep the Debtor as a tenant. Walter alleges that the Corporate Defendants knowingly and intentionally made these statements in order to gain rent concessions from her. Walter alleges that she relied on these misrepresentations when she agreed to grant the Debtor rent concessions, in an effort to avoid more significant losses that she believed would be caused by the Debtor's bankruptcy. Walter also alleges that, as a result of her reliance on these misrepresentations regarding the Debtor's financial condition, she suffered damages in excess of $10,000. The Corporate Defendants argue that Walter has failed to plead a prima facie claim under the UDTPA because, in essence, she merely alleges a breach of contract claim, which, as discussed above, is insufficient to support a claim for unfair and deceptive trade practices. The Court finds the Corporate Defendants' argument to be without merit. The breach of the lease is merely the result of the larger scheme of unfair and/or deceptive acts that Walter alleges. Furthermore, the Court has already concluded that Walter has sufficiently pled a cause of action for fraud under North Carolina law. Accordingly, it follows that such allegations are sufficient to support the lesser pleading standard of a claim under the UDTPA. Thus, the Motion is denied as to the Tenth and Fourteenth Causes of Action.

### 7. Conspiracy

Walter asserts in her Eleventh cause of action that the Defendants conspired to engage in the fraudulent scheme outlined above. In their brief supporting the Motion, the Corporate Defendants argue that YSI, Waffle House, and Kraft could not be co-conspirators with one another as a matter of law under the intracorporate immunity doctrine. See Cohn v. Bond, 953 F.2d 154, 159 (4th Cir. 1991). However, at the hearing, the Corporate Defendants conceded that Waffle House and YSI were distinct corporate entities capable of conspiring with one another. In addition, Walter conceded at the hearing that Kraft, as an officer of Waffle House who made the alleged fraudulent misrepresentations while acting as an agent of Waffle House, could not conspire with her company. Id. The intracorporate immunity doctrine does not bar claims that Kraft conspired with any of the other parties.[5]

In order to sufficiently plead a claim for civil conspiracy under North Carolina law, a plaintiff must allege "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" In re Fifth Third Bank, Nat. Ass'n-Village of Penland Litig., 719 S.E.2d 171, 181 (N.C. Ct. App. 2011) (quoting Strickland v. Hedrick, 669 S.E.2d 61, 72 (N.C. Ct. App. 2008) (internal citations omitted)). There is no independent cause of action for civil conspiracy in North Carolina—a plaintiff may only state a claim for conspiracy if there is an underlying claim for unlawful acts. Toomer v. Garrett, 574 S.E.2d 76, 92 (N.C. Ct. App. 2002). A claim for civil conspiracy essentially associates the defendants together so that the acts and conduct of one defendant may be admissible against all.

---

[5]The intracorporate immunity doctrine provides that "a single entity cannot conspire amongst itself." Cohn, 953 F.2d at 159. Because the parties have conceded that all other parties are distinct and separate entities, conspiracy between them is not barred by this doctrine.

Esposito v. Talbert & Bright, Inc., 641 S.E.2d 695, 698 (N.C. Ct. App. 2007). However, the likelihood of success on the underlying claim is irrelevant to whether the cause of action is sufficiently pled to survive a motion to dismiss. Newton v. Whitaker, 349 S.E.2d 333, 335 (N.C. Ct. App. 1986).

Here, Walter relies on her fraud and unfair and deceptive trade practices claims as the basis for her conspiracy claim. The Corporate Defendants argue that Walter has not sufficiently pled the first element—that there was an agreement between the parties. However, general allegations as to this element are sufficient to survive a motion to dismiss. See, e.g., Toomer, 574 S.E.2d. at 92 (holding that the plaintiff's allegation that the defendant and other unknown John Doe defendants acted "in concert" to injure him was sufficient to withstand a motion to dismiss his civil conspiracy claim); Tate v. Sallie Mae, Inc., No. 3:10-cv-00386, 2011 WL 3651813, at *2 (W.D.N.C. Aug. 19, 2011) (citing Godfredson v. JBC Legal Grp., P.C., 387 F.Supp.2d 543, 549 (E.D.N.C. 2005) (holding that where the plaintiff alleged that the defendants agreed to do unlawful acts, failure to allege specific facts supporting the existence of such an agreement were not sufficient grounds to dismiss the complaint for civil conspiracy).

In her complaint, Walter generally alleges that the defendants "entered into a conspiracy" whereby they would engage in the alleged fraudulent conduct to obtain rent concessions from Walter. This general allegation, taken together with the factual allegations describing the scheme in detail, are sufficient to plead her claim for civil conspiracy. Accordingly, the Motion is denied as to the Eleventh Cause of Action.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that nine of Walter's ten claims against the Corporate Defendants were sufficiently pled. Accordingly, the Court makes proposed

findings of fact and conclusions of law in support of its recommendation that the Motion for Judgment on the Pleadings should be **GRANTED** [6] as to the Seventh Cause of Action for Lender Liability—Instrumentality/Agency.  As to all other causes of action, the Motion is **DENIED**.[7]

      This memorandum opinion constitutes the Court's findings of fact and conclusions of law.  A separate order will be entered contemporaneously herewith pursuant to Fed. R. Bankr. P. 9021.

---

[6] Because the Court has already determined that the Seventh Cause of Action is a non-core matter in the Memorandum Opinion Denying Plaintiff's Motion to Remand, entered on May 24, 2011, the Court's ruling as to this cause of action is a proposed finding of fact and conclusion of law, and not a final judgment.

[7] Because the Court has denied the motion with respect to these claims, Stern v. Marshall, – U.S. –, 131 S. Ct. 2594 (2011), is not implicated; denial of a dispositive motion does not constitute a final order.  Bryan v. BellSouth Commc'ns, Inc., 492 F.3d 231, 240 (4th Cir. 2007); Allen v. Stone, 588 S.E.2d 495, 497 (N.C. App. 2003) (denial of a motion to dismiss merely "continues the action in the trial court for further litigation"); O'Neill v. Southern Nat'l Bank, 252 S.E.2d 231, 234 (N.C. App. 1979) (denial of a Rule 12(b)(6) motion is not a final judgment).

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FREEWAY FOODS OF | ) | Case No. 10-11282 |
| GREENSBORO, INC. | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JANE H. WALTER, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 10-02057 |
| v. | ) | |
| | ) | |
| FREEWAY FOODS, INC., FREEWAY | ) | |
| FOODS OF GREENSBORO, INC., | ) | |
| GARY M. FLY, individually, LYNNE R. | ) | |
| FLY, individually, YELLOW SIGN, INC., | ) | |
| and WAFFLE HOUSE, INC., and | ) | |
| KIMBERLY S. KRAFT, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **PARTIES IN INTEREST**

James C. Adams, II, Esq.

Rachel Scott Decker, Esq.

J. Patrick Haywood, Esq.

James C. Lanik, Esq.

William P. Miller, Esq., Trustee

William B. Sullivan, Esq.

Michael D. West, Esq., Bankruptcy Administrator