**SO ORDERED.**

**SIGNED this 24th day of April, 2014.**


UNITED STATES BANKRUPTCY JUDGE



___

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Freeway Foods of Greensboro, Inc.** | ) | **Case No. 10-11282** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| **Jane H. Walter,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **AP Case No. 10-02057** |
| | ) | |
| **Freeway Foods, Inc., Freeway Foods of** | ) | |
| **Greensboro, Inc., Gary M. Fly,** | ) | |
| **individually, Lynne R. Fly, individually,** | ) | |
| **Yellow Sign, Inc., Waffle House, Inc.,** | ) | |
| **and Kimberly S. Kraft, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO COMPEL

THIS MATTER came before the Court on March 13, 2014, upon the Plaintiff's Motion to Compel Defendants to Respond to Discovery Requests. Appearing before the Court were Patrick Haywood and Matt York, Attorneys for the Plaintiff; Brent Powell, Attorney for the

1

Defendants; and James Lanik, the Chapter 7 Trustee. Based upon the briefing and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FACTS

On July 13, 2010, Defendant Waffle House, Inc. ("Waffle House"), along with other creditors, filed with this Court an involuntary petition against Freeway Foods of Greensboro, Inc. ("Debtor") for relief under Chapter 7 of the Bankruptcy Code. On July 30, 2010, Plaintiff Jane H. Walter filed an action in the Superior Court of North Carolina, Guilford County, against all of the above-captioned Defendants but Kimberly S. Kraft, who was added when the complaint was later amended. On August 9, 2010, this Court entered an order for relief in the Debtor's Chapter 7 case. On November 5, 2010, Defendants Freeway Foods, Inc. and Freeway Foods of Greensboro, Inc. filed a notice of removal of Plaintiff's state court action to the United States District Court for the Middle District of North Carolina (the "District Court"). On December 2, 2010, the Honorable N. Carlton Tilley of the District Court entered an order transferring the proceeding to this Court. The Plaintiff then filed a motion for remand, which this Court denied. The Plaintiff also filed a motion to withdraw the reference, which the Honorable Catherine Eagles of the District Court denied, without prejudice to renew if and when the Plaintiff's claims became ready for jury trial.

The parties are involved in a bona fide dispute over a lease agreement that the Plaintiff executed with the Debtor. The Plaintiff alleges ten causes of action, including breach of a lease agreement, fraud, conspiracy, and unfair and deceptive trade practices.[1] During discovery conducted pursuant to joint scheduling orders issued in this case, the Plaintiff requested copies of certain communications between Waffle House personnel and a Mr. Jonathan S. Waller, general

---

[1] The original complaint alleged eleven causes of action, but on September 6, 2012, Judge Eagles accepted and adopted this Court's Findings of Fact and Conclusions of Law as to dismissal of the seventh cause of action.

2

counsel to Waffle House since 2001. In addition, counsel for the Plaintiff asked Waller about the communications during a deposition that occurred on February 5 and February 6, 2014. Asserting the attorney-client privilege, counsel for Waffle House directed Waller not to answer; Waffle House also refused to produce any physical copies of the requested communications.

The facts concerning Waller and his role with Waffle House can be gleaned from depositions taken and affidavits filed in this case. Waller's legal services to Waffle House have been delivered in Georgia, where Waller resides and where Waffle House is incorporated. Waller holds an inactive license to practice law in the State of Illinois. He holds no active license to practice law. An outside attorney referred Waller to Waffle House's CEO, Walter G. Ehmer, who interviewed Waller. At the time of the interview, Ehmer understood Waller to have then been the General Counsel of Midway Airlines Corporation. Waffle House's Chairman, Joe W. Rogers, Jr., hired Waller to serve as Waffle House's general counsel. Both Ehmer and Rogers believed Waller to be an attorney; both have viewed their communications with Waller as privileged. In addition, certain outside counsel who performed legal work for Waffle House understood Waller to be both an attorney and Waffle House's general counsel. For some time, Waller's law school diploma and bar certificate were displayed in his office cubicle.

On February 24, 2014, the Plaintiff filed a motion to compel answers to the discovery requests and to compel Waller to respond to the deposition questions. The Plaintiff contends that Waller was not an attorney at the time of the communications at issue and that the attorney-client privilege therefore does not protect them. For the reasons stated herein, the motion to compel is denied.

**DISCUSSION**

In a civil case in federal court, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." USCS Fed Rules Evid R 501. Since the Plaintiff's claims in this adversary proceeding all arise in North Carolina law, North Carolina law governs application of the attorney-client privilege in this case. *See also* N.C. Gen. Stat. § 8C-1, Rule 501.

In North Carolina, the attorney-client privilege is a common law doctrine. For a communication between a client and his attorney to be privileged, five conditions must be met: (1) the attorney-client relation must have existed at the time of the communication; (2) the communication must have been in confidence; (3) the communication must relate to a matter concerning which the attorney is employed or is being professionally consulted; (4) the communication must have been made in the course of seeking or giving legal advice for a proper purpose; and (5) the privilege must be asserted by the client. 1-5 Brandis and Broun on North Carolina Evidence § 129 (citing numerous North Carolina cases). The privilege "belongs to the defendant, and may be waived by him." *State v. Campbell*, 629 S.E.2d 345, 350 (N.C. App. 2006) (citing *State v. Bronson*, 423 S.E.2d 772, 777 (N.C. 1992)).

The parties dispute only whether the first condition of the privilege was satisfied. Their arguments address two constituent questions. The first question asks whether Waller was an attorney at the time the communications at issue were made. The second question assumes Waller was not an attorney at the time the communications were made and asks whether in that event Waffle House is categorically precluded from exercising the right to attorney-client privilege. As explained below, the Court concludes that the attorney-client privilege protects the communications at issue even if Waller was not an attorney at the time they were made. This

conclusion being sufficient to resolve the present dispute, the Court refrains from addressing the question of whether Waller was an attorney at the time the communications were made.[2]

In North Carolina, "when the 'client' reasonably believes that he is dealing with an attorney, the [attorney-client] privilege should be accorded" even if the client is mistaken. 1-5 Brandis and Broun on North Carolina Evidence § 129 (citing Uniform Rule of Evidence 502(a)(3); *State v. Wiley*, 565 S.E.2d 22 (N.C. 2002); and *State v. Fuller*, 603 S.E.2d 569 (N.C. App. 2004)). See also *Guy v. Avery County Bank*, 173 S.E. 600, 601 (N.C. 1934) ("The privilege has been recognized…when the circumstances were such as to show that the *relation* of attorney and client actually existed…[,] that the communication was made by the client under a *sense* of absolute privilege." (emphasis added)).

The record in this case amply demonstrates that Waffle House personnel reasonably believed Waller was a properly-licensed attorney and that their communications with him were privileged. The Plaintiff has not once suggested the contrary; neither has she argued that Waffle House waived the attorney-client privilege. At most, the Plaintiff has suggested that Waffle House failed to exercise due diligence in ensuring that Waller was properly-licensed. However, at least in this case, it is the attorney who primarily "has an obligation to ensure that he is properly practicing law—and faces the specter of disciplinary action if he engages in unauthorized practice…[T]he sins of the attorney must not be visited on the client so long as the

---

[2] In arguing that Waller is "an 'attorney' for purposes of applying the attorney-client privilege," the Defendant in its brief draws from the case law of other circuits to contrast several purportedly distinct concepts, including being "authorized to practice" law versus being "admitted to the…state bar" and being "on 'inactive' status" versus "remain[ing] a member of the bar." Judicial restraint counsels not wading into this murky area of the law. See *Citizens United v. Fed. Election Commn*., 558 U.S. 310, 405 (2010) (Stevens, J., concurring in part and dissenting in part) (quoting PDK Labs., Inc. v. Drug Enforcement Admin., 362 F.3d 786, 799 (C.A.D.C.2004) (Roberts, J., concurring)) ( "[I]f it is not necessary to decide more, it is necessary not to decide more…").

client has acted reasonably in its belief that its counsel is, in fact, an attorney." *Gucci Am., Inc. v. Guess?, Inc.*, 09 CIV 4373 SAS, 2011 WL 9375 (S.D.N.Y. 2011).[3]

## CONCLUSION

Because Waffle House reasonably believed that Waller was a properly-licensed attorney and that its communications with him were privileged, the attorney-client relation existed at the time of the communications at issue. As such, all the elements of the attorney-client privilege are present with respect to the communications and Waffle House is within its rights in refusing to respond to the Plaintiff's inquiries about them. Since the Court has refrained from deciding whether Waller was or is in fact an attorney, however, it follows that the privilege does not necessarily protect communications between Waffle House and Waller that have occurred—or will have occurred—after Waffle House learned Waller was not licensed to practice law in any state.

Based on the foregoing, the Court hereby ORDERS the Plaintiff's motion DENIED.

**END OF DOCUMENT**

---

[3] Even were it certain that Waller was not an attorney, it is not clear whether he could be said to have been engaged in the unauthorized practice of law. See *State v. Pledger*, 127 S.E.2d 337, 339-40 (N.C. 1962) ("A person who, in the course of his employment by a corporation, prepares a legal document in connection with a business transaction in which the corporation has a primary interest, the corporation being authorized by law and its charter to transact such business, does not violate the statute [prohibiting the unauthorized practice of law, N.C. Gen. Stat. Ann. § 84-4], for his act in so doing is the act of the corporation in the furtherance of its own business.")